PRESIDENT AND FELLOWS OF HARVARD COLLEGE *vs.* ASSESSORS OF CAMBRIDGE.

Middlesex. November 15, 16, 1899. — January 4, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Tax — Exemption from Taxation of Property of College occupied as Residences by Officers of College and also used for College Purposes.*

Real estate owned and provided by a college without rent or compensation, or a lease or any agreement for a fixed term for the use of students who club together for the purpose of obtaining, with the assistance of the college, food at cost, also the estate occupied by the president of the college, who pays no rent or other compensation for its use and has no lease of it, and the estate occupied by professors, all of which are kept in order and repair at the expense of the college, most of the lower portions of the houses being used for meetings and exercises connected with the college, and for different purposes incident to the offices and duties of the occupants, and the other portions being used by them and their families as dwellings, the salaries of the professors being fixed at certain sums " and the use of the house " at a sum stated, are all exempt from taxation under Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465.

APPEAL to the Superior Court, from a decision of the respondents on a petition for an abatement of taxes assessed upon the petitioner's property in Cambridge. Trial, without a jury, before *Bell,* J., who found for the petitioner; and, with the consent of the parties, reported the case for the determination of this court. The facts appear in the opinion.

*G. A. A. Pevey,* for the respondents.

*S. Hoar, (W. Sullivan* with him,) for the petitioner.

MORTON, J. This is an action to recover back taxes that were assessed by the respondents on certain parcels of real estate be-

longing to the petitioner situated in Cambridge, which the petitioner contends were exempt from taxation under Pub. Sts. c. 11, § 5, cl. 3, as amended by St. 1889, c. 465.

The case was heard by a justice of the Superior Court, without a jury, on what are called agreed facts, but which we interpret as authorizing him to draw such inferences as he thought warranted; he held that the property was exempt, and found for the petitioner for the entire amount, and reported the case to this court in such a manner as to present the question of the assessability of each of the parcels.

We think that the ruling of the Superior Court was right, and that all of the property was exempt from taxation. Many of the principles and considerations and authorities applicable to this case have been stated and referred to somewhat at length in *Phillips Academy* v. *Andover*, *ante*, 118, and we do not deem it necessary to repeat them here.

The history of Harvard College and of like institutions shows, we think, that from the beginning dormitories and dining-halls have been furnished by the college for the use of the students, and have been regarded as devoted to college purposes. In addition to this, the effect of the decisions in *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599, and *Mount Hermon Boys' School* v. *Gill*, 145 Mass. 139, is plainly to exempt property applied to such uses. See also *Yale University* v. *New Haven*, 71 Conn. 316, and *State* v. *Ross*, 4 Zabr. 497. We do not think that it makes any difference in principle that the college, instead of furnishing board itself, provides a place, without rent or compensation in any form, or a lease or any agreement for a fixed term, for the use of students who club together for the purpose of obtaining for themselves, with the assistance of the college, food at cost. The property so used is occupied, it seems to us, for the purposes for which the college was incorporated. Many particulars are stated in the agreed facts in regard to No. 17 Kirkland Street, which is the parcel that we are now considering, which we do not think it necessary to refer to, as it seems to us plain that the property is exempt from taxation.

The history of the college and of the legislation relating to it also shows, we think, that the president's house, during the earlier years of the college at any rate, was regarded as almost, if not

quite, as necessary for the purposes of the institution as dormitories and dining-halls.   Public money was appropriated by the general court to build it as it had been to build the college buildings, and the occupancy of it was evidently considered as official. The present house was built with funds given expressly for the purpose of erecting a dwelling-house for the president and his successors in office, and since it was built has been occupied by them and their families.   The president is required to live in Cambridge.   He pays no rent or compensation for the use and occupation of the house, and has no lease, but occupies it, if he chooses, so long as he performs the duties of president.   It, with several of the other houses that were taxed, namely, Nos. 11, 25, and 37 Quincy Street, this being 17 Quincy Street, is now and was at the time of the assessment within the college grounds, and the premises are kept in order and repair, including grading, gravelling the walks, fertilizing, and repairing and cleaning furnace, removal of ashes, etc., under the direction of the college superintendent of buildings and the superintendent of grounds and at the college expense.   The whole lower floor, " except possibly the kitchen, is used for Class Day, Commencement, and other receptions, and for many hospitalities incident to the president's functions."   " The hall and drawing-room are also used for the convenience of the college and the president for meetings of the faculty and committees, for conferences with university officers and students, for calls on university business, and for the annual meetings of the corporation at which degrees are voted." The rest of the house consists of the usual living and housekeeping rooms and chambers, and is used by the president and his family as a dwelling-house.

It seems to us that on these facts the judge who heard the case was justified in finding that the dominant or principal purpose of the occupancy by the president was that for which the college was incorporated.   His occupation, it could be fairly said, was, so far as the university was concerned, official, as the head of the university, just as, for instance, the President occupies the White House, and not in any just sense primarily or principally for his own private benefit.

The remaining six houses are occupied by professors, three of whom are deans, each charged with a portion of the administra-

tive duties formerly devolving exclusively on the president. Three of the houses, as already observed, are within the college grounds. All of them are kept in order and repair at the expense of the college in the same manner and to the same extent as the house occupied by the president. The halls and drawing-rooms in all of them, except No. 37 Quincy Street, occupied by Professor Langdell, are used, partly for the convenience of the college and partly for that of the professor, for different college uses and purposes incident to his duties as professor, chairman of committees, dean, and the like. In the case of No. 11 Quincy Street, the drawing-room and hall are used by the professor for regular college exercises during the college year. In the case of No. 16 Quincy Street, the professor is Chairman of the Freshman Advisory Committee of the Faculty of Arts and Sciences, consisting of about twenty persons, and he has a great number of interviews in his drawing-room with students and parents. In the case of 25 Quincy Street, the college in 1892 made additions and improvements at its own expense so as to make the house more convenient for the transaction of college business and the entertaining of guests on college account. The additions as well as the drawing-room and hall are used for different college purposes incident to the several duties of the occupying professor. The parts of the houses to which no reference has been made are used by the professors and their families, and consist of the usual living and housekeeping rooms and chambers. In the fall of the year, when the salaries of the professors are voted, they are fixed at certain amounts "and the use of house, $750," or whatever the sum may be; otherwise the professor "pays no rent and has no other agreement for his occupation and use of said house, but uses it as such professor." We think that it was competent for the justice who heard the case to find on these facts that the dominant consideration in regard to the occupation of the houses by the several professors had reference to the performance of their duties as officers and professors, rather than to the private benefit which they would receive in the way of homes for themselves and their families, and that he was justified in finding that the occupancy was for the purposes for which the college was incorporated.

This case is distinguishable, we think, from *Williams College* v.

*Williamstown*, 167 Mass. 505.   In the first place, there was no question in that case as to the taxation of a building used for a dormitory and dining-hall for the students.   In the next place, the occupation by the professors in this case clearly lacks the exclusive character which it was held to have in that case.   In the third place, no such use for college purposes is shown to have been made of the houses occupied by the professors in that case as appears in this case.   In the fourth place, the sums fixed as compensation for the use of the houses in that case were paid and received as rent, and were so treated by the court.   In this case, the sums fixed for the use of the houses were allowed as part of the compensation for services as professors, thus tending to show, as said in *Massachusetts General Hospital* v. *Somerville*, 101 Mass. 319, 326, that " the occupation was one merely by reason of service," and that the value put upon the use of the house was merely " a convenient mode of adjusting the compensation . . . and not as the income or fruit of an estate granted."  Lastly, this case seems to be one where the buildings are occupied, as it was said in *Pierce* v. *Cambridge*, 2 Cush. 611, 613, 614, " with the permission of the college, and without [the professors] having any estate therein, or paying any rent therefor," in which case the property would be exempt from taxation.   See also *White* v. *Bayley*, 10 C. B. (N. S.) 227.

The respondents rely on *Third Congregational Society* v. *Springfield*, 147 Mass. 396, which was a case where a parsonage was declared to be unexempt.   The court held that religious societies did not come within the clause that we have been considering, but within the seventh clause, and that the exemption was limited to houses of religious worship only.   That case is not applicable to this.

We think that the judgment of the Superior Court should be affirmed.

*So ordered.*