(98 App. Div. 237)

PEOPLE ex rel. BOARD OF TRUSTEES OF MT. PLEASANT ACADEMY v. MEZGER et al., Town Assessors.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. TAXATION—EXEMPTIONS—EDUCATIONAL PROPERTY.

Sleeping rooms, drill rooms, armories, stables, library buildings, buildings occupied by principals as a residence, recreation halls and dining halls, which constitute a part of the foundation of an academy, and are used in its administration exclusively, are used exclusively for educational purposes, within Laws 1896, p. 797, c. 908, § 4, subd. 7, exempting from taxation property used exclusively for educational purposes.

2. SAME.

The criterion of whether property is used exclusively for educational purposes, within Laws 1896, p. 797, c. 908, § 4, subd. 7, exempting such property from taxation, is whether it is exclusively devoted to the use of the institution in the mental, moral, and physical training and proper maintenance of those attendant upon it.

3. SAME—PROFIT TO OFFICERS.

Where an academy was farmed out by the trustees to the principal, who conducted it under their supervision, they reserving all of their powers under the charter, the rental which they received from the principal, and which was applied by them to erecting buildings and improving the grounds of the institution, without any personal gain to themselves, was not a pecuniary profit, within the meaning of Laws 1896, p. 797, c. 908, § 4, subd. 7, which provides for the taxation of educational institutions if any officer thereof shall be entitled to receive pecuniary profit therefrom other than reasonable compensation for services rendered in effecting its educational purposes.

Appeal from Special Term, Westchester County.

Certiorari by the people, on the relation of the Board of Trustees of Mt. Pleasant Academy, against William F. Mezger and others, as assessors of the town of Ossining. From an order striking relator's assessment from the assessment roll, respondents appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Smith Lent, for appellants.

Frank L. Young, for respondent.

JENKS, J. The relators are the trustees of an academy in the town of Ossining, incorporated by special act (chapter 107, p. 90, Laws 1820). In 1827, under the general law (chapter 59, p. 260, 2 Rev. Laws 1813), the trustees received a charter from the board of regents, and the academy has since been subject to visitation, inspection, and control by that board. The trustees have made and filed with that board the annual statement required by law and the rules of the board, showing

receipts, disbursements, its property, and the curriculum required by the academy. From time to time the school has shared in the apportionment of moneys provided by the Legislature for support and maintenance of academies. The learned Special Term has decided that under subdivision 7, § 4, of the tax law (Laws 1896, p. 797, c. 908), the property of the academy is wholly exempt from taxation by the town authorities. The assessors contend that all of the real and personal property of the relator is not used exclusively for educational purposes within the purview of this statute. It is insisted that "sleeping rooms and drill rooms, armories and stables, library buildings and buildings occupied by the lessees as a residence, recreation halls and dining halls," although a part of the academy foundation, and used in the administration thereof, are not within the exemption contemplated by the statute. The academy is both a day and a boarding school; consequently dormitories are necessary for the boarding pupils. The pupils are required to wear military uniform, and are under military discipline. It is appropriate, then, that there should be an armory and a drill room. No particulars are given touching the stable. But it seems natural that a horse or horses should be required, and therefore must be kept, in the maintenance of a large boarding school. A library building is germane, if not essential, to the equipment of an academy. "The lessee" is the head of the school, who lives in four rooms in one of the academy buildings; in other words, the principal is in residence. If the boarding pupils must dine, a dining hall is the proper place to serve them with victuals. Recreation grounds are common to almost every large school in these days, when the old saw, "All work and no play makes Jack a dull boy," is held hygienically sound. In People ex rel. Adelphi College v. Wells (not yet officially reported), 89 N. Y. Supp. 957, this court, per Willard Bartlett, J., says: "It may be assumed that the use of real property for the cultivation of athletics should be deemed an educational purpose under the tax law." While the learned counsel does not attempt to define specifically what part of such property is, within the purview of the statute, to be regarded as used exclusively for educational purposes, still in the light of his objections it would seem that in his view none of the property of such an institution is so used save the recitation and study rooms. I think that this view is too narrow; that the term "exclusive educational purposes," when applied to this academy, is broad enough to cover the buildings and grounds which form a part of the foundation, and which are exclusively used for the school life, whether the lads are at study or at recitations, or are eating, reading, sleeping, drilling, or at play. Education includes moral as well as intellectual and physical instruction. Bouvier. In Ruchs v. Backer, 6 Heisk. 395, 19 Am. Rep. 598, Nelson, J., says: "In its broadest sense, the word 'education' comprehends not merely the instruction received at school or college, but the whole course of training, moral, intellectual, and physical." In Chegaray v. Jenkins, 5 N. Y. 376, Ruggles, C. J., speaking of such a statute of exemption, says the object of the statute seems to have been to encourage education generally. In Temple Grove Seminary v. Cramer, 98 N. Y. 121, Andrews, J., says, "The policy of the exemption is the encouragement of learning." The statute should be applied so as to exempt the entire articulated system of an

institution, and not merely the rooms or parts of buildings where tasks are conned or lessons are recited. The criterion is whether the property is exclusively devoted to the use of the academy in the education which the institution offers to those attendant upon it in the sense that education contemplates their mental, moral, and physical training, and their proper maintenance while upon the rolls. See People ex rel. Academy of the Sacred Heart v. Commissioner of Taxes and Assessments, 6 Hun, 109, affirmed 64 N. Y. 656. The question is well and thoughtfully discussed by Henry Hirschberg, Esq., referee, in his opinion adopted by this court in People ex rel. Missionary Sisters v. Reilly, 85 App. Div. 71, 83 N. Y. Supp. 39.

It is also objected that the trustees receive pecuniary profit from the academy, within the prohibition of the statute. The trustees lease the academy to Mr. Brusie and Mr. Emory at a yearly rental, graduated by the number of boarding pupils, which cannot exceed $3,000 per annum, and which must be large enough to pay insurance and interest on the indebtedness of the academy. The rental is $3,000 per annum in addition to insurance. The lessees covenant to use the premises as an academic school, subject to the control of the trustees in the exercise of their duties under the charter. The tuition of day scholars from the town is limited to $50 a year, and certain free scholarships open to the public schools are provided for. In other words, the trustees, instead of conducting the school, farm it out to the principal, who conducts it under the supervision and visitation of the trustees, who have reserved all of their powers under the charter. Under this arrangement the trustees in effect receive in excess of the cost of maintenance $3,000. The exception of the statute is aimed at any officer, member, or employé who receives or may lawfully receive any pecuniary profit from the operation of a school, except reasonable compensation for services in effecting its educational purposes. The assessors' return sets forth:

"We are not informed that the trustees claim that such sum of $3,000 may be kept by them as reasonable compensation for any work they do in relation to the academy or its work. On the contrary, we are informed and believe that no one of them charges anything for his services. * * * We have no doubt the whole income has been used in the erection of new buildings, such as brick stables, gymnasiums, and library buildings, and in buying libraries, and in repairs and changes in the main building, the most expensive of which we understand to be the tearing out of lath and plaster ceilings and the substitution of metal ceilings; nor have we any doubt the trustees will be able to spend the income for all time to come. But that any educational purpose requires such expenditure we do not believe, nor do we believe the fact that such expenditures are made by them makes the property exempt from assessment."

Further, the evidence shows without contradiction that the receipts have always been devoted to buildings and the improvement of the academy grounds, and that there is no surplus, but that the academy is in debt for some of the improvements. It is also testified that none of the trustees has received any profit of any description. I think that the provision of the statute does not regard this $3,000 as profits, or, in other words, as private gain, to those who control or conduct the school. So long as the surplus is in good faith employed in the legitimate and

justifiable betterment or improvement or increase of the school foundation, its buildings, etc., it takes the shape of property held for educational purposes.

The order should be affirmed, with costs.  All concur.