In the Matter of the Application of MARY IMMACULATE SCHOOL OF EAGLE PARK, Respondent, for a Writ of Certiorari to the BOARD OF ASSESSORS OF THE TOWN OF OSSINING, Appellant.

Second Department, April 17, 1919.

Tax — exemption determined by use of property when tax assessed — tuition charge does not deprive school property of exemption — exemption of buildings occupied by chaplain of boarding school and farmer — land intended to be further developed by more buildings — uncultivated portion of farm.

The use of property at the time when a tax is assessed determines whether it is exempt from taxation.

The usual tuition charge by private schools does not deprive the school property of exemption from taxation.

Where an educational institution conducting a boarding school occupies a tract of 99 acres formerly used as a farm and inclosed by about 30 acres of woodland, a building occupied by the chaplain and the residence of the farmer who raises vegetables, etc., for the use of the school are places of residence within the common inclosure and are included in the school's educational purposes within the meaning of the Tax Law.

A portion of such land within the common inclosure intended to be further developed by more buildings is entitled to exemption under subdivision 7 of section 4 of the Tax Law.

The thirty acres of woodland which is uncultivated and nearly surrounds the main tract is not a severed, detached parcel, but is an integral part of the estate and entitled to exemption.

APPEAL by the Board of Assessors of the Town of Ossining from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 12th day of July, 1918, granting an application to strike from the assessment roll of said town for the year 1917 the real property assessment of the petitioner, on the ground that said real property is exempt from taxation.

*Edgar L. Ryder*, for the appellant.

*Winfield L. Morse* [*John J. Sinnott*, attorney], for the respondent.

PUTNAM, J.:

The relator is an educational institution for young women, holding a charter granted on September 16, 1915, by the

Second Department, April, 1919.      [Vol. 188.

Regents of the University of the State of New York. It acquired an old estate in Ossining of about ninety-nine acres. It conducts a boarding school for pay pupils. The teachers receive no salary. The land, formerly a farm, extends from the Albany Post road westward to the Hudson River railroad. Across the Albany Post road are about three acres, from which relator derives its supply of drinking water. A frame building covers and protects this reservoir. The main tract of about ninety-five acres has a fringe or margin along the northerly and westerly boundaries, consisting of about thirty acres of woodland which, being rocky and in places abrupt, cannot be cultivated. None of this wood has been cut down, but fallen trees are taken out and used for fuel. There is also a portion of swamp land with thickets described as impenetrable.

About eighteen acres of the farm have been cultivated for potatoes and other vegetables for the school table, and for fodder for the cattle. No produce is sold. About fifteen acres are in hay. There are nine buildings on this estate, being the school teaching building of twenty rooms, occupied by the pupils and teachers, with a cottage also used for school rooms, and a second cottage for the chaplain's residence. Other buildings are barns, granary, greenhouse, chicken houses and a former garage used now as a laundry and a girls' gymnasium. In the main barn are kept eight cows and three horses. Other smaller buildings are used for storage. One is occupied by the farmer who takes care of the live stock. These are all structures erected before relator acquired the property — presumably relics of the days of cheaper farm labor.

It is not suggested that any personal profit has been made from the school. The expenses have exceeded the receipts for the three years of its operation.

The learned justice at Special Term directed a cancellation of this assessment.

On this appeal it is contended that the relator, being a membership corporation, may possibly allow some official or employee to make a future profit, since it receives pay scholars, and its corporate by-laws have not been produced. It, however, appears without contradiction that no officer, member or employee receives any pecuniary profit from

the school operations. It is the use of the property at the time when the tax is assessed which determines whether it is exempt from taxation or not. (*Amherst College* v. *Assessors of Amherst,* 193 Mass. 168, 178.) The tuition charge which private schools generally make does not deprive such school property of tax exemption. (*People ex rel. Trustees* v. *Mezger,* 98 App. Div. 237; affd., 181 N. Y. 511.)

The building occupied by the chaplain, and the other structure which houses the farmer, are places of residence, within the common inclosure, which are regarded as included in the school's educational purposes. (*State* v. *Ross,* 24 N. J. Law, 497; *Phillips Academy* v. *Andover,* 175 Mass. 118; *Amherst College* v. *Assessors of Amherst,* 193 id. 168; *Yale University* v. *New Haven,* 71 Conn. 316; 43 L. R. A. 490.) The appellant cites *People ex rel. Church of St. Mary* v. *Feitner* (168 N. Y. 494) as to the $2,000 exemption for a religious corporation. Unlike the case of an exemption for a religious corporation under subdivision 9 of section 4 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62) the chapel exercises in an educational or charitable institution are properly institutional, and are as much a requisite as scholastic studies. On the other hand, the provision for the clergy house of religious corporations, under subdivision 9 of section 4, is distinct from that here involved. To avoid doubt, that statute expressly states that such $2,000 exemption is to be " in addition to that provided by subdivision seven of this section."

Many buildings which passed over to the relator when it bought this estate, though not originally adapted for school purposes, are utilized to store the crops till used, and to keep covered the farm wagons and utensils. It stands undisputed that the relator is making efforts to increase the number of pupils so that new buildings are to attend the growth of the school. As war conditions stopped such projects, no architectural plans have yet been prepared.

Such land within a common inclosure, intended to be further developed by more buildings, becomes entitled to exemption under the words exempting lands " though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such

Second Department, April, 1919.          [Vol. 188.

buildings or improvements is in progress, or is in good faith contemplated by such corporation or association." (Tax Law, § 4, subd. 7, as amd. by Laws of 1916, chap. 411.)*

A strong argument is made against the uncultivated thirty acres. It is not a severed detached parcel, as were the thirteen acres denied exemption in *People ex rel. Missionary Sisters v. Reilly* (85 App. Div. 71; affd., 178 N. Y. 609). Here, however, the woodland is a margin (though now untillable) nearly surrounding this main tract. It is, therefore, an integral part of such estate, and apparently within the same inclosure. The brush thicket is described as protecting the reservoir from flooding the land. Such a farm estate should not exclude all woodland. Even in *People ex rel. Blackburn v. Barton* (63 App. Div. 581) the school was granted exemption for eighty acres of cleared land and fifty acres of woodland, but was taxed on the remaining timberland, which was not used for any purpose.

Here I think the assessors could not set off and separate such edgings along a farm, and treat that uncultivated side strip as outside of, and distinct from, relator's school purposes. In agriculture waste lands on banks and hillsides are but incidental to the fertile ground which they join or inclose, and seldom have any separable value. The argument that this town land in the populous parts of Ossining has become of large value, does not deprive the relator of its statute exemption, any more than in the instances of the landed estates of longer established private schools and higher institutions in the larger cities.

I advise, therefore, to affirm the order, with costs.

JENKS, P. J., RICH, BLACKMAR and JAYCOX, JJ., concurred.

Final order affirmed, with costs.

---

* Since amd. by Laws of 1918, chap. 288.— [REP.