## STATE v. CARLETON COLLEGE.[1]

January 12, 1923.

No. 23,284.

**Exemption of schools and colleges from taxation.**

1. Article 9 of the state Constitution, both before and since the amendment of 1906, has contained this provision as to the exemption from taxation of educational institutions, viz: "academies, colleges, universities, and all seminaries of learning * * * shall be exempt from taxation."

**Liberal construction of such exemption.**

2. The policy of the state has always been to secure the education of its citizens and to encourage the endeavors of private benevolence to that end, hence provisions exempting the property of schools and colleges from taxation, being in the nature of such encouragement, should be construed with less strictness than other taxation exemption provisions.

**College real estate exempt.**

3. Real estate owned by a college, devoted to and reasonably necessary for the accomplishment of its educational purposes, is free from taxation.

**College dormitories not on the campus exempt.**

4. College dormitories are not subject to taxation if situate upon land detached from the campus, provided they are devoted to like use as if upon the campus.

**Houses for officers of the college exempt.**

5. The same is *held* in respect to residences acquired for the president and professors of the college, there being a reasonable necessity for their use in connection with the operation of the institution.

**Method and policy of school not considered by the court.**

6. The courts, in applying the provision of the constitution exempting institutions of learning from taxation, will not consider whether those in charge use the most economical methods or the wisest policies in the conduct of the school.

[1]Reported in 191 N. W. 400.

Farm land used for needs of school exempt.

7. The farm land acquired by the defendant, adjoining its campus and being all used and devoted to its needs and purposes, should be held exempt from taxes. Mere incidental profit, derived from some items thereon produced, will not subject such farm to taxation.

Detached farm not exempt.

8. The evidence does not show that an 80 acre tract, nearly two miles distant from the campus farm, is devoted to or reasonably necessary for the accomplishment of the purposes of an institution of learning, and is not exempt.

Exemption not affected by manner of bookkeeping.

9. The matter of defendant's bookkeeping does not affect the question of exemption from taxation.

Proceedings in the district court for Rice county to enforce payment of real estate taxes remaining delinquent on the first Monday in January, 1922. The matter was heard by Childress, J., who made findings and ordered judgment in favor of plaintiff for the full amount of taxes and penalties aggregating $4,793.26. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed as to all the tracts referred to except the 80 acres.

*Davis, Severance & Morgan* and *Cleon Headley*, for appellant.

*Egbert S. Oakley*, Deputy Attorney General, *Lucius A. Smith*, County Attorney, and *William W. Pye*, for respondent.

Holt, J.

The proceeding is to enforce payment of delinquent taxes against real property in the county of Rice owned by Carleton College. The college claimed the property to be exempt from taxation under section 1, article 9, of the Constitution. The court found it was not. From the judgment entered, the college appeals.

The judgment embraces several separate tracts in and adjacent to the city of Northfield, where the college is located. It has there a good sized campus on the east side of Cannon river adjoining the north city limits whereon are located the main college buildings

and dormitories. No part of the campus proper is sought to be taxed. Immediately adjoining the campus on the north and east, farm lands have been acquired. These are in a compact body and extend into Dakota county, and comprise in all 260 2/10 acres. There is also included in the judgment a tract of 80 acres, without buildings, located about two miles east of Northfield. Upon the farm contiguous to the campus are the necessary farm buildings to care for a large herd of cows, and also dwellings for the caretakers, and accommodations or dormitories for 15 students. The objects sought by the college authorities in acquiring and operating this farm are to secure an attractive setting for the college campus and make sure of ample grounds for an extension thereof, including the maintenance of a chain of small artificial lakes on the northeastern boundary of the campus, to interest and keep students in touch with rural activities, to furnish means of employment to some self-supporting students, and to supply the dormitories with the necessary milk, some 125 gallons daily, and such eatables as might be raised. Virtually all that can be produced on the farm goes to supply the tables in the dormitories, the exceptions being mere incidentals, as for instance, the pigs kept to consume the garbage are sold, because it is found more convenient to buy the pork than to butcher, and the sale of the milk on the market during vacations when the dining halls of the dormitories are not running.

The college also owns and operates a dormitory for women students called Dean Lodge. It is situate upon a plot of ground two blocks south of the campus. It is put to precisely the same use as are the students' dormitories upon the campus proper. This was taxed under the judgment.

There are also involved five separate lots, or parts of lots, upon which are residences occupied by professors of the institution. These are scattered, but are within two blocks of the campus. One of these residences is occupied by the president of the college.

Respondent insists on the principle often announced that all provisions in constitutions and statutes looking to the exemption from taxation, or the burdens of government, should be strictly construed and limited to property clearly within the letter of the law.

STATE V. CARLETON COLLEGE 283

"In the construction of a law exempting property from taxation, courts will indulge no presumption that will extend the exemption beyond the plain requirements of the law itself." St. Peters Church v. Board of Co. Commrs. County of Scott, 12 Minn. 280 (395). Language of similar import has been used in nearly every case dealing with exemptions from taxation since that decision. County of Hennepin v. Grace, 27 Minn. 503, 8 N. W. 761; County of Hennepin v. Bell, 43 Minn. 344, 45 N. W. 615; County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783; State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882.

But it is to be noted that the decisions involving the exemptions of church parsonages or rectories were rendered when the Constitution with reference to such exemptions read: "all churches, church property used for religious purposes, and houses of worship", whereas the Constitution with respect to educational institutions has always read: "academies, colleges, universities, and all seminaries of learning" shall be exempt. And in Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278, it is said the decision in the parsonage cases might have been different had the constitutional provision read as does the one relating to the exemption from taxation of schools and colleges. It should also be borne in mind that whilst the value of religious influences has been recognized and encouraged as a factor for good by this nation, still complete separation of church and state has always been insisted upon as the best safeguard for religious liberty. Therefore, it was but natural that, when it came to exemption from the general burdens of government of property held by church organizations, care was taken not to extend it beyond that devoted to religious purposes. If the church could acquire and hold free from taxes property used in business enterprises, she would depart from her true mission and become a competitor of other business concerns, a field in which she is entitled to no advantage over them. It is also near at hand for organizations which accumulate great possessions to enter the political field with a view to further temporal aggrandizement and power. The strict construction which excluded parsonages or rectories from exemption from taxation was not only called for by the

wording of the Constitution prior to the amendment of article 9 in 1906, but by the state's policy towards the church. In County of Ramsey v. Church of the Good Shepherd, supra, the theory is developed that, for church property to be exempt from taxation, its chief use must be for religious purposes. However, some other incidental uses do not destroy the exemption.

But education stands in a different position to the state than does religion or the church. From the earliest times in the state's history, and, we might with propriety add, this nation's history, the education of its citizens has been deemed indispensable to the very existence of government and the perpetuation of our institutions. This idea has grown, until now we not only provide teachers, buildings and equipment with a liberal hand from the public funds, but we enact laws to compel the children to attend the schools. The demand for education has more than kept pace with the endeavors of the state to supply the wherewithal. Our state university is overcrowded, so are the schools maintained by the state for the training of teachers. And this is so, although thousands of our young men and women attend higher institutions of learning away from the state. In every city of any magnitude, the demand for more school buildings and more extensive grounds to be used in connection therewith is increasing. With this situation in mind, should strict rules of construction be applied to the tax exemption of private institutions doing the very work the state deems so imperative, but wherein it realizes that with all its efforts the desired measure of success has not been fully achieved? We think not.

The founders of the Constitution took pains to specify all grades of educational institutions in granting immunity from taxation. There were no qualifying or limiting words at all inserted in respect thereto. The legislature in the early days recognized the same principle in granting charters to three infant institutions of higher education exempting all their property, however used, from taxation. This court has given heed to the same thought in prior decisions. In County of Nobles v. Hamline University, 46 Minn. 316, 48 N. W. 1119, the exemption in the charter of that institution was held to apply to all lands owned by the corporation wherever situate. The

present Chief Justice in State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882, where endowment funds for educational purposes were held exempt from taxation, voiced the same sentiment saying [at page 97]:

"The work of such institutions is done primarily for the individual educated, but results ultimately in the public good. Their function is largely public, and property possessed by them is devoted, not to private gain to individuals, but to a beneficient use—the education and enlightenment of the citizen. Corporations or individuals who are charged as trustees with the maintenance of such institutions are not the recipients of special privileges or in any sense obnoxious to the law. On the contrary, the theory in extending to them immunity from taxation is that the property is placed at the service of the state, and ought not to be burdened with taxation. It is retired from private ownership, and devoted exclusively to the support and maintenance of institutions, the encouragement of which our people have always consistently kept in the foreground.

"In construing the section of the Constitution under consideration, the spirit of the times when it was adopted, as shown by the attitude of the territorial legislature and the people, should be infused into it, and reasons of practicability and effectiveness, so far as consistent with the usual canons of construction, applied in determining its purpose and meaning. In this light it is important to inquire how such institutions may best and most successfully be encouraged. The 'encouragement' ought not to be limited to mere formal acts of recognition or praise on the part of the state or people, but to broad acts of such potentiality as will result in substantial benefit and assistance to them."

The courts in other states construe more liberally provisions exempting from taxation the property devoted to educational purposes than when the exemption provisions relate to property owned and used for other purposes. In Yale University v. Town of New Haven, 71 Conn. 316, 42 Atl. 87, 43 L. R. A. 490, it is said that the nontaxation of property devoted to public purposes has been, "not the exception, but the rule from the foundation of our

government." Educational institutions are devoted to public purposes. See People v. Sayles, 23 Misc. 1, 50 N. Y. Supp. 8; State v. Fisk University, 87 Tenn. 233, 10 S. W. 284.

All authorities agree that when an institution is exempted from taxation this includes all its property devoted to and reasonably necessary for the accomplishment of its purposes. County of Hennepin v. Brotherhood of Gethsemane, 27 Minn. 460, 8 N. W. 595, 38 Am. Rep. 298; County of Hennepin v. Grace, supra; Ramsey County v. Macalester College, supra; State v. St. Barnabas Hospital, 95 Minn. 489, 104 N. W. 551.

Applying the principles alluded to and our former decisions, the question whether the several tracts included in the judgment appealed from are exempt from taxation is readily answered.

That dormitories for students are reasonably necessary for institutions like defendant is beyond doubt. For years such have been maintained in this and other states whenever means were available. Sanford Hall has existed for some time at the University, and the demand for more, also for men's dormitories has there been urgent. The fact that Dean Lodge is not upon the campus seems to us wholly unimportant. Its use, and the necessity of its use to the college, is the same. The exempt faculty houses in Ramsey County v. Macalester College, supra, appear not to have been upon the campus proper. The State Agricultural College, a part of the University, to say nothing of the various branches of experimental stations or branches, has for several years been located several miles from the university campus. That some streets or blocks intervene between the main buildings of defendant and some of its other buildings and grounds devoted to the use of the college seems to us as of no importance in the application of the constitutional exemption provision.

What has been said with reference to Dean Lodge also disposes of the faculty houses and the president's house. Had these been located on the campus, the right to tax could not have been asserted. Providing homes for the professors of an institution of this sort is regarded as reasonably necessary. Ramsey County v. Macalester College, supra. Courts will not readily interfere with the

judgment of the governing body of an educational institution as to what is for its best interests financially or otherwise. The situation in the place where the institution is located, its present available means, and its policy with reference to the influence desired to be exerted between the professors, the students, and the townspeople may be fairly taken into account. The exclusiveness that might result from the location of all the students and faculty families upon the campus may appear undesirable to those in charge of an educational institution. The houses here in question are as conveniently near the work of the institution as if on the campus.

Decisions from other states show that mere separation from the campus is of no significance in determining whether the property of an educational institution is tax free. Nor is it important that students pay for their room and board or that the professors' salaries are diminished by what is termed rent for the houses they occupy. Ramsey County v. Stryker, 52 Minn. 144, 53 N. W. 1133; Chicago v. University of Chicago, 228 Ill. 605, 81 N. E. 1138, 10 Ann. Cas. 669; Trustees of Griswold College v. State, 46 Iowa 275, 26 Am. Rep. 138; Yale v. New Haven, supra; Harvard College v. Cambridge, 175 Mass. 145, 55 N. E. 844, 48 L. R. A. 547; State v. Ross, 24 N. J. Law, 497; People v. Mezger, 98 App. Div. 237, 90 N. Y. Supp. 488. A well reasoned case along the lines hereinbefore suggested is Trustees of Phillips Academy v. Andover, 175 Mass. 118, 55 N. E. 841, 48 L. R. A. 550. See also Wheaton College v. Inhabitants of Norton, 232 Mass. 141, 122 N. E. 280; and State v. Erickson, 44 S. D. 63, 182 N. W. 315, 13 A. L. R. 1189, where many authorities are cited and discussed, and where the court reaches a conclusion different from that of this court as to the exemption of parsonages from taxes.

The objects in view in acquiring the farm contiguous to the campus, as testified to by Dr. Cowling, the president, have been stated substantially. The fact remains that all thereof is in use and, except as to incidental matters, wholly devoted to present legitimate purposes of the institution. Whether it would have been more economical not to have acquired this farm land is not the test whereby to determine its taxability. The college is in a small town. The adjacent farm land is not so expensive that it is necessary to greatly

restrict the acreage. The State University maintains many large and small tracts of land for experimental and educational purposes at various places in the state, and, of course, tax free. The purposes of Carleton College in owning and maintaining this farm may not be precisely the same, still from the point of view of the managing board of the college it is along educational lines and in support of necessary functions of the modern college, and, therefore, it ought to be equally freed from the burdens of general taxation with the land of the State Agricultural College and its experimental stations. Our conclusion is that the court erred in holding this farm land, contiguous to the campus and used as stated, subject to taxation. The tract held not so exempt in Ramsey County v. Macalester, supra, was made no use of whatever.

Courts of other states emphatically sustain the conclusion that this farm is exempt. Monticello Seminary v. People, 106 Ill. 398, 46 Am. Rep. 702; Commonwealth v. Berea College, 149 Ky. 95, 147 S. W. 929; Trustees of Wesleyan Academy v. Wilbraham, 99 Mass. 599; Mary Immaculate School v. Board, 188 App. Div. 5, 175 N. Y. Supp. 701; State v. Fisk University, supra; Commonwealth v. Trustees of Hampton Inst. 106 Va. 614, 56 S. E. 594. The provisions in the statutes or constitutions of the states whose court decisions are cited herein may not be exactly worded as the one in our Constitution now involved, but the similarity is sufficient to give weight to such decisions.

The testimony in respect to the use of the 80 acres, located about two miles east of the lands just above described and held subject to taxation, leaves it in a somewhat different situation. Its proximity to the main buildings of the institution is not such as will lend itself readily to serve any apparent present purpose. Its use does not seem reasonably necessary. In a sense there is not a marked difference between an endowment fund of a college, the profit, or interest of which goes to its support, held exempt from taxation in State v. Bishop Seabury Mission, supra, and farm land acquired with such a fund and worked with a view to help support the college. But in that case it was taken for granted that lands stand on a different footing from endowment funds. The distinction was

said to have become established law under the rule of stare decisis in State v. St. Barnabus Hospital, supra, where a farm owned by the institution and leased, the rent going to maintain the hospital, was held subject to taxation. But there are, perhaps, valid reasons for this. For instance, the investment of endowment funds in lands for business or speculation profits by an educational or charitable institution, may be regarded as withdrawing such land from the legitimate purposes of the institution and subjecting it to business competition, and to the usual burdens of business, including taxes. Again, there is the hazard of loss of capital in business that endowment funds provided by private benevolences should not be subjected to. We think the court right in holding taxable this distant, detached, 80 acres, the use of which does not appear to be reasonably necessary for the purposes of the college.

The complaint of injustice to the city of Northfield, by the ruling that the farm described as contiguous to the college campus and this dormitory and scattered faculty houses are exempt from general taxes, is not to be taken seriously. No doubt golden eggs come to the denizens of the city of Northfield from Carleton College and St. Olaf College, in fact its consuming population is increased some 2,000 during the school year, to say nothing of the cultural benefits emanating from institutions of learning. The wail of protest may well be imagined, should any other city attempt to secure the removal of these institutions from Northfield. Moreover, the exemption does not go to assessments levied upon abutting property for improvements.

Some stress is laid upon the bookeeping arrangements, in that the milk is charged to the dormitories at certain prices, and rents to the professors occupying the houses mentioned are charged against their salaries. But all this is to ascertain how these matters figure in the general management of the institution. The object being to render as efficient service educationally as the income will permit, and without any design to make a profit either from the single student or from any department in the college. At that, the larger part of the means needed each year to operate the institution must come from current private benevolence, the interest derived from

endowment funds, tuition, the charge for board and rooms furnishing less than half of the amount expended. The bookeeping system of the college should play no part in determining what property is exempt from taxation.

The result is that the judgment as to each and every tract or parcel of land therein described is reversed, except as to the west one-half of the northwest quarter of section 33, township 112, range 19, which is affirmed.