In the Matter of the Application of SYRACUSE UNIVERSITY for an Order to Show Cause Why Certain Assessments upon the Property of Said University in Syracuse, N. Y., Made in 1924, by HERBERT W. WIGHT and Others, as the Board of Assessors of Said City, Should Not Be Held Illegal, Unjust and Unreasonable, and Why Said Assessments Should Not Be Vacated and Set Aside, and the Assessment Roll Corrected Accordingly.

Supreme Court Onondaga County, April 18, 1925.

Taxation — exemption — assessment against property of Syracuse University — property claimed to be exempt includes detached houses used as student dormitories, nurses dormitories, student infirmaries, chancellor's residence, dormitory storehouse, part of university farm, and vacant lots not on main campus — Syracuse University is corporation organized exclusively for moral and mental improvement of men and women and for educational purposes within meaning of Tax Law, § 4, subd. 7, as amd. by Laws of 1924, chap. 489 — all property mentioned is exempt except portion of dormitory rented for store purposes and vacant lots.

Syracuse University is a corporation organized exclusively for the moral and mental improvement of men and women and for educational purposes, and all real property owned by the university which is exclusively used for those

purposes is exempt from taxation under subdivision 7 of section 4 of the Tax Law, as amended by chapter 489 of the Laws of 1924.

Detached buildings which were formerly private residences but are now owned by the university and which are used as dormitories for women students who reside therein and are furnished their meals for a consideration equivalent to the cost to the university, are exempt from taxation, since such buildings are devoted exclusively to educational purposes within the meaning of the exemption provision of the Tax Law, for educational purposes include mental, moral and physical training of those in attendance upon the institution and their proper maintenance while upon the rolls; the fact that a charge is made to those who occupy the dormitories does not change the rule, for the dormitories are not operated for profit.

A building not on the university campus used as a dormitory for nurses employed at the hospital which is maintained by the university in connection with the medical school thereof, is exempt from taxation, not only on the ground that it is a part of the property of an educational institution, but on the further ground that it is a part of the hospital.

Likewise, a building used as an infirmary for the care of students of the university, who while they are confined therein are not required to pay in the individual case for the service received and who are cared for through the administrative staff of the hospital of the university, is exempt from taxation.

A building maintained by the university, the primary purpose of which is for the storage and distribution of food and other household necessities used in the dormitories and hospital, and supplies used in the various buildings of the university, a small part being used for demonstration and instruction by the College of Agriculture, is exempt from taxation, although members of the faculty are given the privilege of purchasing goods thereat at cost.

A farm used by the College of Agriculture for demonstration and instruction purposes is exempt from taxation though it appears that while most of the crops raised on the farm are used at the university there is a small surplus of produce which is sold and the proceeds paid into the university treasury, from which all the debts are paid, since it also appears that the farm is run at a loss; the incidental sale of produce does not deprive the property of exemption.

The official residence of the chancellor of the university, the use of which is considered a part of his compensation, which is used by him not only as a private residence, but as a place of assemblage for meetings of a social nature and otherwise, required in the proper performance of his duties as chancellor, is exempt from taxation, and the fact that the assessors may have deemed the residence too elaborate for the use of the chancellor and his family, does not deprive the property of exemption, for the question as to what manner of residence will comport with the dignity of the chancellor of a great university and enable him to perform his duties in the best manner, is a matter that must be left to the discretion of the trustees of the university.

A three-story brick building situated outside the university campus, the ground floor of which is rented and occupied as a store, while the two upper floors are occupied as dormitories for nurses, is exempt to the extent that it is used for dormitories, but not in so far as it is used for a store from which the university derives an income.

Vacant lots owned by the university but not upon the university campus are not exempt from taxation under the provisions of subdivision 7 of section 4 of the Tax Law, which provides, in effect, that real property of such an institution though not actually used by the institution by reason of the absence of suitable buildings or improvements thereon will be exempt if the construction of such

buildings is in progress or in good faith contemplated by the institution, for the proof in this case does not show that the use of the vacant lots for the purposes of the university is at the present time in good faith contemplated, within the meaning of the statute.

MOTION for order setting aside assessments.

*Nottingham, Smith, Clymer & Kingsley*, for the petitioner.

*Frank J. Cregg, Corporation Counsel* [*H. E. Wilson* of counsel], for the respondent.

CHENEY, J.:

This is an application pursuant to section 2 of the act to supplement the provisions of law relating to the department of assessment and taxation of the city of Syracuse (Laws of 1906, chap. 75, as amd. by Laws of 1923, chap. 304) for an order declaring certain assessments made by the respondents, the board of assessors of the city of Syracuse, against the property of the petitioner to be unjust and unreasonable and to vacate the same.

This statute provides for the city of Syracuse a summary method of determining the validity of any assessment of property for the purpose of taxation, which by its terms is made exclusive, and it supersedes all other methods of review of assessments provided by any other law or statute. It is within the power of the Legislature to provide for such method of review, provided the constitutional rights of property owners are preserved, and when exercised such method is exclusive. (*N. Y. C. & H. R. R. R. Co. v. City of Yonkers*, 238 N. Y. 165, and cases there cited.)

This statute provides that within fifteen days after the completion, filing and correction of the assessment rolls by the assessors, any person aggrieved by any assessment may apply to the county judge of Onondaga county or to any Supreme Court judge sitting therein for an order to show cause why the assessors should not correct any such assessment rolls and vacate and correct any tax appearing thereon. Such application shall be upon a verified petition setting forth that the tax complained of is unjust and unreasonable. Upon the return of the order to show cause the judge or court before whom it is returnable shall hear the proceeding in such manner as he may direct, and determine the validity of the assessment.

The respondents, constituting the board of assessors of said city, in the year 1924 placed upon the assessment rolls for general taxation assessments upon certain properties belonging to the petitioner amounting in the aggregate to $257,230. Petitioner appeared before the assessors during the grievance days appointed by law and objected to said assessments upon the ground that they were

illegal in that the property was exempt from taxation by law, and requested that they be stricken therefrom. The assessors refused to accede to that request, but continued said assessments thereon. In due time petitioner upon proper papers procured an order to show cause why the assessments should not be declared illegal. Upon the return of the order the court appointed a referee to take the proof of the facts and report to the court. The proof has been taken and the matter is before the court upon the original papers and the proof and the findings of the referee as to the facts for determination.

The petitioner, Syracuse University, is a corporation existing by special act of the Legislature (Laws of 1887, chap. 414, and the acts amendatory thereof), the objects thereof being the diffusion of knowledge, the promotion of learning, literature, science and art, in their various departments, and the knowledge of the learned professions. It is authorized to create as departments of said university such colleges as the trustees deem expedient or necessary to accomplish the purposes of the university; to prescribe rules and regulations for the government of the same; to organize and employ faculties, and prescribe courses of study therefor, and to grant and issue to the students or graduates of any such colleges such degrees and diplomas and such honorary degrees as are usually granted or issued by institutions of like nature in the United States. It is subject to the visitation of the Regents of the University of the State in the same manner and to the same extent as the various colleges of the State.

Pursuant to the authority conferred upon it by law, it has organized and is conducting the following colleges of such university: College of Medicine, College of Liberal Arts, College of Fine Arts, College of Applied Science, College of Law, College of Agriculture, Teachers' College, College of Business Administration, College of Home Economics, and two schools, the Library School and the School of Oratory. There is located upon the campus and operated in connection with the university, the New York State College of Forestry. The university owns and operates as an adjunct to its College of Medicine the Hospital of the Good Shepherd, and in connection with its College of Agriculture a farm of some 200 acres, where practical instruction in farming and cattle raising is given. There is in attendance upon the different colleges of the university between 5,000 and 6,000 students, from all of whom is exacted a charge for tuition and other incidental expenses, although to some, by reason of scholarships, a reduction is made, and there is employed a faculty of about 500 members. All of the receipts from the institution from every source go into a common fund,

Supreme Court, April, 1925.        [Vol. 124

from which all the expenses of every character are paid. The net result from its operation for many years has been a deficit, which is made up from voluntary contributions from friends of the institution or is carried as a debt.

The main campus of the university consists of one large tract of some sixty acres, not cut up by streets, upon which are erected many of the buildings used for instruction purposes, the gymnasiums and athletic fields, the shops of the College of Applied Sciences and one large dormitory. All of the buildings owned and used by the university for its purposes are not situated upon the main campus, nor even adjacent thereto, but for the most part are within convenient distance therefrom, except the Medical College, Law College and the university farm, which are a considerable distance away. Across the street from the main campus are buildings used as dormitories for students, and in the " hospital block," so called, about a block from the main campus, are the hospital buildings, the student infirmaries and nurses' homes used in connection with the hospital.

Not all of this property is involved in this proceeding, as no attempt has been made to assess the main campus, nor any of the buildings upon it, the large dormitories, nor the main hospital property and many nurses' homes in connection therewith. This proceeding includes only certain detached houses used as student dormitories, nurses' dormitories and student infirmaries, the chancellor's residence, the so-called dormitory store, a part of the university farm, and certain vacant lots off the main campus, which are not at the present time put to any particular use. The petitioner claims that they are all exempt by law from taxation, and that, therefore, their assessment is illegal. As they naturally fall into classes, the facts and the law applicable to each group will be discussed together.

The law provides: " The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for  *  *  *  hospital, infirmary, educational, scientific, literary  *  *  *  purposes  *  *  *  or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of any such corporation shall be exempt from taxation. But no such corporation or association shall be entitled to any such exemption if any officer, member or employee thereof shall receive or may be lawfully entitled to receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes.  *  *  *.  The real property of any such corporation or association entitled to such

exemption held by it exclusively for one or more of such purposes and from which no rents, profits or income are derived, shall be so exempt, though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements is in progress, or is in good faith contemplated by such corporation or association. * * *. The real property of any such corporation not so used exclusively for carrying out thereupon one or more of such purposes but leased or otherwise used for other purposes, shall not be exempt, but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion shall be subject to taxation." (Tax Law, § 4, subd. 7, as amd. by Laws of 1924, chap. 489.)

It is conceded that no officer, member or employee of petitioner receives or is entitled to receive any pecuniary profit from the operation thereof, except reasonable compensation for services in effecting one or more of its educational purposes or as a proper beneficiary of its strictly charitable uses. Therefore, the exception in the statute does not apply. No question can be made but that the petitioner is a corporation organized exclusively for the moral and mental improvement of men and women and for educational purposes, and if the real property assessed against here is used exclusively for these purposes it is exempt from taxation.

The general rule of construction of statutes exempting property from taxation is that they are to be strictly construed against those claiming the exemption. (*People ex rel. Young Men's Assn.* v. *Sayles*, 32 App. Div. 197; *People ex rel. D. K. E. Society* v. *Lawler*, 74 id. 553.) That, however, does not mean such a literal interpretation as would defeat or nullify the intention of the Legislature, which in this instance is to encourage, foster and protect corporate institutions of a religious and literary character. (*People ex rel. Seminary of Our Lady of Angels* v. *Barber*, 42 Hun, 27; *People ex rel. Missionary Sisters* v. *Reilly*, 85 App. Div. 71.) This is especially true with regard to educational institutions, as they are recognized as performing a public duty in the education of its citizens which otherwise would devolve upon the State itself. (*State* v. *Carleton College*, 154 Minn. 280; 191 N. W. 400.) Judge VANN as referee in the opinion adopted by the court in *People ex rel. Walcott* v. *Parker* (84 Misc. 534, 547) used this language: " While taxation is the rule and exemption the exception and the

burden of showing exemption rests on the one claiming it, the statute regulating the subject should be read in the light of the policy of the State of New York, established early in its history and increasing in liberality as time has passed, to encourage education. The State expends much money each year for this purpose, and, in further promotion of its broad policy, exempts from taxation the property of such associations, corporate or voluntary, as are organized exclusively for, among others, educational or charitable purposes, and used exclusively for one or more of those purposes."

Nine properties, Nos. 201, 207, 209, 211, 307 and 309 University place, 906 University avenue, and 430 and 434 Walnut avenue, have been assessed in sums aggregating $85,525. These properties, originally private residences, are situated immediately across the street from the main campus and adjoin two large dormitories for women students. They are all exclusively occupied as dormitories for women students in the university, and are managed and conducted directly by the university authorities in precisely the same manner as are the other large dormitories which no attempt has been made to tax. In these buildings 131 women students have their living apartments, and in two of them are conducted dining rooms where the students' meals are served. Those who live in the houses where there are no dining rooms get their meals in the dining rooms in the other houses or in the main dormitories not involved in this proceeding. For this service a charge is made to the students, which goes into the general treasury of the university and all expenses are paid therefrom.

It has long been recognized that dormitories and dining halls for the students are essential parts of universities and colleges, and the test as to whether the property devoted to such use is exclusively used for educational purposes within the meaning of the exemption provisions of tax laws is that education contemplates the mental, moral and physical training of those in attendance upon the institution, and their proper maintenance while upon the rolls. (*People ex rel. Trustees* v. *Mezger*, 98 App. Div. 237; affd., 181 N. Y. 511; *Yale University* v. *Town of New Haven*, 71 Conn. 316; *City of Chicago* v. *University of Chicago*, 228 Ill. 605; *State* v. *Carleton College*, 154 Minn. 280; 191 N. W. 400; *Borough of Princeton* v. *State Board of Taxes & Assessments*, 96 N. J. Law, 334; 115 Atl. 342; *Harvard College* v. *Assessors of Cambridge*, 175 Mass. 145.) The fact that a charge is made to those who occupy these rooms separate and apart from the general charge for the tuition is immaterial. It appears in this case that the university has not at its disposal sufficient dormitory space for all of its students and that many of them must perforce room outside the col-

Misc. 788] Supreme Court, April, 1925.

lege buildings. Consequently those that have this extra service must share the cost of its maintenance, and it does not appear that any profit is derived by the university from the amounts paid. These properties clearly are used exclusively for the educational purposes for which the university is created, and are exempt from taxation.

The property 723 South Crouse avenue is assessed for $8,550. This property is used exclusively as a dormitory for nurses employed at the hospital, some of them student nurses and some graduate nurses. All receive their meals in the dining room in the main hospital building, which is not assessed. No sums whatsoever are received by the university for the use of these rooms by the nurses, although all the expense of upkeep is paid by it. The university, in connection with its medical college, owns and operates the Hospital of the Good Shepherd, which is operated as a general hospital for the care and treatment of the public generally. Some are paying patients, some partly paying and some entirely charitable. In this hospital are conducted clinics and other practical instruction in medicine and surgery for the students of the medical college. There is also conducted therein, as a branch of the university, a training school for nurses, at the end of which those who successfully complete the course are granted certificates as registered nurses. The nursing work in the hospital is done by the nurses in training and by graduate nurses. Both classes receive their maintenance as a part of their compensation from the university.

It is unnecessary to split hairs to determine whether this institution is maintained as a part of the educational plant of the university, or purely as a hospital. Property devoted to either purpose is exempt from taxation. That this property, although only used to house the nurses, is devoted exclusively to one or the other or both of those purposes cannot be questioned. (*New England Sanitarium* v. *Inhabitants of Stoneham*, 205 Mass. 335; *Matter of St. Elizabeth Hospital*, 109 Neb. 104; 189 N. W. 981.) As such it is exempt from taxation.

The university furnishes to such of its students who are so ill as to require it an infirmary service, which includes medical and hospital attention. For this no charge is made in the individual case, although there is charged upon each of the students a general fee for a number of student activities such as athletics, laboratory work, the infirmary service and others, the cost of all of which is defrayed by the university treasury. Formerly this service was rendered in the hospital proper, but recently the university acquired two residences in the same block with and adjacent to the hospital,

and fitted them up to take care of these patients. There the students of the university, who require it, are cared for through the medium of the administrative staff of the hospital, of which it really forms a part. These properties have been assessed.

The rule to be applied in determining the exemption of property is expressed in the following language in *People ex rel. Trustees* v. *Mezger* (98 App. Div. 237): " The statute should be applied so as to exempt the entire articulated system of an institution, and not merely the rooms or parts of buildings where tasks are conned or lessons are recited. The criterion is whether the property is exclusively devoted to the use of the academy in the education which the institution offers to those attendant upon it in the sense that education contemplates their mental, moral and physical training, and their proper maintenance while upon the rolls." The care of the health is certainly as much a part of the education as is physical training. Property used in the physical training has been held to be exempt. (*People ex rel. Adelphi College* v. *Wells*, 97 App. Div. 312.) I am of the opinion that the property used for students' infirmaries is exempt.

The university also maintains a building, the primary purpose of which is for the storage and distribution of food and other household necessities used in the dormitories and the hospital and supplies used in the various buildings of the university, although a small part of it is used for demonstration and instruction by the College of Agriculture. It is designated in the papers as the dormitory store. The method of its operation is as follows: The university buys in large quantities the supplies necessary for the maintenance of the various buildings and for the dining rooms of the dormitories and the hospital. They are stored in this building and are distributed where needed upon requisition under the direction of a storekeeper and his assistants. In addition the members of the faculty are accorded the privilege of purchasing their provisions for family use, at a cost to them of the cost of the goods plus a small overhead to cover expenses, resulting in a less cost than if purchased at the ordinary store. From ten to fifteen per cent of the business done at this place is of that character. No goods are sold to any others than the members of the faculty. The whole cost of the purchases and the expenses of management are paid from the university treasury, and the bills to the faculty are collected by its administrative force and paid into the treasury.

The furnishing of goods to members of the college faculties is merely incidental to its main purpose, which is the carrying on of its main educational purposes and does not relieve the property from the general exemption. (*People ex rel. Seminary of Our Lady*

*of Angels* v. *Barber*, 42 Hun, 27; affd., 106 N. Y. 669; *People ex rel. Trustees* v. *Mezger*, 98 App. Div. 237; *People ex rel. Missionary Sisters* v. *Reilly*, 85 id. 71; *People ex rel. Blackburn* v. *Barton*, 63 id. 581; *Commonwealth* v. *Berea College*, 149 Ky. 95; *Mercersburg College* v. *Mercersburg Borough*, 53 Penn. Super. Ct. 388.)

In connection with its College of Agriculture, the university maintains, and has for many years, a farm for demonstration and instruction purposes. A few years ago there was purchased an adjoining farm, and since that time the two have been conducted together as one farm. The recent purchase has been assessed, but the original farm has not. No reason is assigned for the distinction, unless we may assume that the assessors have determined that too much property is being devoted to this purpose. Unless it appears that the pretended educational use is merely a cloak to procure an exemption from taxes, we apprehend that the judgment of the university authorities as to the amount of property reasonably required for its educational purposes is conclusive, provided the property is actually used for those purposes and not for profit. (*Emerson* v. *Trustees of Milton Academy*, 185 Mass. 414.)

Argument is not needed to demonstrate that it would be highly desirable to supplement the instructions received in the class room in a college of agriculture with practical demonstrations of the methods of the raising of crops, soil testing and cattle raising. In order to do this a farm is necessary and it should be conducted as a model farm, which would include the raising of crops and cattle and the production of milk. That is what is done in this case. All of the milk produced is used in the hospital. The most of the crops raised are used upon the farm, but there is a small surplus of certain kinds of produce which is sold and the proceeds paid into the university treasury, from which all the debts are paid. No profit is secured from the operation of the farm, as it runs to a deficit every year. The claim is made that those incidental sales deprive the property of its exemption. The claim is not tenable. (*People ex rel. Blackburn* v. *Barton*, 63 App. Div. 581; *Matter of Central Union Conference Assn.*, 109 Neb. 106; 189 N. W. 982; *Commonwealth* v. *Hampton Inst.*, 106 Va. 614.)

The university also maintains for the use of the chancellor an official residence, the use of which is by the contract between them a part of his compensation. The residence is not situated upon the main campus, but is conveniently located about four blocks therefrom. If it was located upon the campus, I apprehend that no question would be made but that it was exempt. The principal objection to this residence appears to be that in the judgment of the assessors it is too elaborate, and that a more modest building

Supreme Court, April, 1925.    [Vol. 124

would adequately house the chancellor and his family. I am convinced that the discretion to decide as to what manner of a residence will comport with the dignity of the chancellor of a great university and will enable him to perform such duties of his office as can best be done therein, is committed to the trustees of the university and not to the assessors.

The evidence shows that in the performance of his duties as the head of the institution it is desirable that he conduct meetings and other occasions of a social nature, and that it is customary and most fitting and convenient that those duties be performed in his residence. Under those circumstances the finding is justified that the dominant and principal purpose of the occupancy of the chancellor's residence was that for which the university is incorporated, an educational purpose, and that its use as a residence was incidental. Such use of the property entitles it to the exemption. (*Matter of Mary Immaculate School*, 188 App. Div. 5; *Harvard College* v. *Assessors of Cambridge*, 175 Mass. 145; *Trustees of Amherst College* v. *Assessors of Amherst*, 193 id. 168; *Trustees of Griswold College* v. *Iowa*, 46 Iowa, 275; *Northampton Co.* v. *LaFayette College*, 128 Penn. St. 132; *Cathedral of St. John* v. *County Treasurer*, 29 Colo. 143; *State ex rel. Spillers* v. *Johnston*, 214 Mo. 656.)

Another piece of property, described as Colonial Hall, has been assessed for $22,550. This is a three-story brick building, situated upon the hospital block. The first or ground floor is rented and occupied as a store, from which the university derives an income. The upper two floors are occupied as a dormitory by nurses, both student and graduate, of the hospital operated by the university. This occupation is the same as that of the nurses' dormitory previously discussed and the same principles apply. By reason of the occupancy of the ground floor as a store, this property is not " exclusively used " for carrying out thereupon one or more of its educational purposes, and is not wholly exempt, but the statute provides: " but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more of such purposes of any such corporation or association, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion, shall be subject to taxation." (Tax Law, § 4, subd. 7.) Applying that statute, the portion of this property which is used for the purposes of the petitioner is exempt from taxation and the remaining portion is not. It appears that two-thirds of it is so used and one-third is not. No accurate proof has been given as to the value of these different portions, but upon the hearing the

petitioner offered to allow the assessment to stand at one-half its amount. This apportionment of value was apparently acquiesced in by the respondents. As it appears to be reasonable, the assessment upon this Colonial Hall property will be reduced to $11,275.

The other assessments complained of are upon certain vacant lots at 203 University place, between Nos. 407 and 415 University place and on South Crouse avenue, assessed collectively at $15,000. These vacant lots are for the most part in the same city block and contiguous to other properties now being used as dormitories, and have been acquired with the end in view of ultimately erecting thereon additional dormitories, for which the university is sadly in need. The question of their exemption depends upon the statute which reads: " The real property of any such corporation or association entitled to such exemption held by it exclusively for one or more of such purposes and from which no rents, profits or income are derived, shall be so exempt, though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements is in progress, or is in good faith contemplated by such corporation or association." (Tax Law, § 4, subd. 7.)

Reading all the provisions of this statute as a whole, the legislative intent appears to be not to wholly exempt all property held by a corporation organized for educational purposes, but only that portion thereof as is actually used in carrying out such purposes. In order that the word used should not be too literally construed, the above-quoted language was inserted, which continues the exemption during such time as property not actually used is being prepared for such use. This includes not only the period of actual construction, but also a reasonable time for making the necessary preparations for construction. However, it does not permit such a corporation to acquire property, with an undefined hope or expectation that some time in the future it will be enabled to use it for its purposes, and hold it indefinitely free from taxes. (*People ex rel. Missionary Sisters* v. *Reilly*, 85 App. Div. 71; *Matter of Mary Immaculate School*, 188 id. 5.) The proof in this case does not show that the use of this property for the purposes of the petitioner is at the present time " in good faith contemplated," within the meaning of the statute. This property was, therefore, properly assessed.

An order may be prepared correcting the assessment roll in accordance with this memorandum, with costs to the petitioner.