# 𝕮𝖆𝖘𝖊𝖘

---

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. EDMUND G. HUTCHINSON AND OTHERS, AS TRUSTEES OF THE FIRST CONGREGATIONAL CHURCH OF THE VILLAGE OF PHŒNIX, APPELLANT, v. JOHN O'BRIEN AND OTHERS, AS ASSESSORS OF THE VILLAGE OF PHŒNIX, RESPONDENTS.

*Religious society — land of, occupied by a church and a parsonage building — the parsonage is not exempt from taxation — form of assessment.*

Upon an appeal from an order affirming an assessment upon certain real property belonging to the relators, and dismissing a writ of *certiorari*, obtained, under chapter 269 of 1880, to review an assessment, it appeared that the relators, the trustees of a church, owned a parcel of land situate in the village of Phœnix, 132 feet wide on Bridge street and 150 feet deep on Jefferson street. At the time the assessment was made there stood upon the land, fronting on Bridge street, a brick church used by the relator's society exclusively for public worship; and also fronting on the same street, and separated from the church by a narrow space, a wooden building, erected and used by said association exclusively for the parsonage, and occupied by the pastor of the church as a dwelling-house. The pastor received an annual salary, the parsonage being furnished for his use by the society; upon the rear of the lot were sheds for horses to accommodate the teams of those attending public worship.

It was claimed by the relators that the ground upon which the building, denominated a parsonage, stood was exempt from taxation under subdivision 3 of section 4 of title 1, chapter 13, part 1 of the Revised Statutes, as amended by chapter 397 of 1883.

*Held,* that the parsonage was not exempt from taxation, and that the assessors properly assessed it.

The cases bearing upon this question, collated and considered by VANN, J., at Special Term.

The assessment was against "Trustees First Congregational Church," the property assessed being described as "parsonage," and the valuation was entered $1,600. *Held,* that this description did not mislead the relators.

That the absence of a statement of the quantity of the land which it was intended to assess, if important under the village charter, was not a source of any injury to the relators.

That the proper mode of assessing such property was to take the value of the part of the lot actually occupied by the religious society from the value of the whole property, and to assess the society upon the value of the residue.

APPEAL from an order of the Onondaga Special Term, which was entered in the office of the clerk of Oswego county on September 28, 1888, affirming an assessment against the relators and dismissing a writ of *certiorari* obtained under the provisions of chapter 269 of the Laws of 1880, to review an assessment upon certain real property belonging to the First Congregational Church of the village of Phœnix, known as the parsonage.

The relators are the trustees of a religious corporation which owns a parcel of land situate in the village of Phœnix, 132 feet wide on Bridge street and 150 feet deep on Jefferson street. At the time the assessment in question was made there stood upon the said lot, fronting on Bridge street, a brick church used by said society exclusively for public worship, and, also, fronting on the same street and separated from the said church by "a narrow space," a wooden building, erected and used by said association exclusively for a parsonage, and occupied by the pastor of said church as a dwelling-house. The pastor received an annual salary, the parsonage being furnished for his use by the society. Upon the rear of said lot were "sheds for horses, and a barn erected and used for the accommodation and comfort of the teams and horses of those who may attend public worship at said church." The greater portion of the entire parcel of land was covered by the erections aforesaid.

The following opinion was delivered by VANN, J., at Special Term:

"VANN, J. This proceeding presents the following question for decision: Where two buildings belonging to a religious corporation stand near each other and upon the same parcel of land, one being used for a church and the other for a parsonage, is the latter exempt from taxation under the laws of this State?

582     PEOPLE ex rel. HUTCHINSON v. O'BRIEN.

FOURTH DEPARTMENT, JULY TERM, 1889.

" This precise question does not appear to have been passed upon by our courts, although the opportunities to raise it have been numerous and frequent.   As recently said by one of the justices of this court, when considering a kindred topic, ' the question has in this State usually been one of concession rather than litigation.' (*People ex rel. Seminary of Our Lady of Angels* v. *Barber*, 42 Hun, 27, 31.)

" Certain general principles applicable to the subject of exemption from taxation are, however, well established.   Taxation is the rule and exemption from taxation the exception.   Every presumption is in favor of the tax and against the exemption.   A statute in order to create an exemption must be clear, explicit and free from doubt.   Its language is to be strictly construed, and must plainly express the intention of the legislature.   If its meaning is doubtful, the decision of the courts must be against the exemption.   The right must be expressly conferred, and it can never arise by mere implication.   When, however, the power of exemption is clearly exercised by the legislature, effect must be given to it by the courts.

" These rules are applicable to religious, charitable and educational corporations claiming exemption from taxation.   The authorities upon the subject are uniform and too numerous for convenient citation, but they can be found in nearly all of the text books, and especially in the following : Cooley on Taxation (pp. 146–152); Burroughs on Taxation (pp. 132–136); Blackwell on Tax Titles ([3d ed.], pp. 403–409); Browne on Assessments and Taxation (pp. 20–34); Snyder on Religious Corporations (p. 86).

" Our Revised Statutes provide that ' every building erected for the use of a college, incorporated academy or other seminary of learning, and in actual use for either of such purposes, every building for public worship, every school-house, court-house and jail used for either of such purposes, and the several lots whereon such buildings so used are situated, and the furniture belonging to each of them,' shall be exempt from taxation.   (2 R. S. [7th ed.], 982, § 4, sub. 3, as amended by chap. 397, p. 571, Laws of 1883.)

" If a liberal construction of this statute would include a parsonage under the description of a building for public worship upon the ground that it indirectly promoted that object, the strict construction that is uniformly applied to the subject by the courts of

PEOPLE ex rel. HUTCHINSON v. O'BRIEN.    583

FOURTH DEPARTMENT, JULY TERM, 1889.

all the States and of the United States, without exception, does not permit that conclusion.  A building used solely for a private residence, and in which public worship is never held, is not a building for public worship.  The public have no more right to enter a parsonage, occupied by the clergyman and his family, for public worship, than they have to enter the residence of any member of the congregation for that purpose.  A parsonage is not used for public worship, but is simply the residence of the pastor who conducts public worship in another building devoted exclusively to that object.  As held by the court in the *Trinity Church Case* (10 How. Pr., 138): 'A building for public worship is an edifice devoted primarily, if not exclusively, to church services generally.' A building may be used for worship, as every private house should be, but it is public worship or religious services to which the public is admitted that is required by the statute.  As pertinently asked by Judge PECKHAM in a recent case, 'How can that worship be called public to which the public is not admitted?' (*Assn. for Colored Orphans* v. *Mayor*, etc., 104 N. Y., 585.)

"If a religious association furnishes its pastor a house free of rent, the use of that house relieves the society from the payment of a salary that otherwise would be correspondingly larger.  Thus the rental value of the parsonage is a part of the pastor's compensation.  If he saw fit to board and lease the house to some one, he would receive the rental value in money instead of actual use.  If he let the house for some commercial purpose the result would be the same.  He would receive the rent as a partial compensation for his services, and the society would have to raise by ordinary methods so much less money.  Thus we might have the extreme but still possible case where a part of the property of a religious corporation was used for a manufactory, the income going to the support of the pastor.  Such a case, however improbable, would not differ in legal effect from the case under consideration, because in either event the rental value of the property claimed to be exempt would go to the support of the pastor, and thus, indirectly, promote public worship.  The building would not, however, be used for public worship.  Such a construction of the statute would pervert its meaning and lead to a result never intended by the legislature. The statute, when strictly construed as the law requires, limits the

exemption to a building actually used for public worship, and does not include a building the income or use of which is devoted to the support of the pastor.

" The severity with which the rule of strict construction has been applied is illustrated by the following cases: *Chegary* v. *The Mayor, etc.* (13 N. Y., 220); *Colored Orphan Asylum* v. *The Mayor, etc.* (104 id., 581); *Buffalo City Cemetery* v. *City of Buffalo* (46 id., 506).

" The relators claim that the case of the *Young Men's Christian Association of the City of New York* v. *Mayor* (44 Hun, 102), recently decided by a divided court in the first department, is applicable to this proceeding. The decision in that case, however, was placed upon the ground that the building was used exclusively as a place for holding public worship and religious and social meetings, and for imparting religious and secular instruction to young men. In other words, it was used partly for public instruction and partly for public worship, and was held to be exempt on both grounds.

" The case of the *People ex rel. Seminary of our Lady of Angels* v. *Barber* (42 Hun, 27), is also cited by the learned counsel for the relators. This case was based upon the statute exempting every building erected for the use of a college, incorporated academy or other seminary of learning.

" It is obvious that buildings erected for the use of schools, the subjects taught being unlimited, have a much wider range of uses than a building for public worship simply. Accordingly it was held that in the case of a public seminary of learning, the statutes make no qualification of the purpose for which the lot and buildings might be used other than that which is necessarily or fairly incident to the objects of the institution, and that all lands and buildings used in the proper business of the institution were exempt from taxation. This case goes further than the Court of Appeals has yet gone, but not far enough to control the decision of the case at bar.

" Although no case has been cited from the reports of this State in which the exact question under consideration was determined, we are not without light upon the rule as settled in other States.

" Under a statute in Indiana exempting ' every building erected for religious worship   *   *   *   and the lands whereon such build-

ing is situate, not exceeding ten acres,' it was held that a parsonage standing within twelve feet of the church and communicating with it by means of doors opposite each other through which the pastor had access to his study in the church, and to the part of the church used for public religious services, was not exempt. (*Trustees, etc.* v. *Ellis*, 38 Ind., 3.)

" A statute of Massachusetts exempted 'all houses of religious worship.' A congregation erected a building for that purpose, consisting of a cellar, basement story and second story. The second story was used for a church, the cellar was used to heat the church by means of a furnace, but the basement story was rented for secular purposes, and the income used to pay for erecting the building and the support of public worship. It was held that the part that was rented was not exempt from taxation. (*Proprietors, etc.* v. *City of Lowell*, 42 Mass. [1 Metc.], 538.)

" The courts of Ohio, Michigan and Missouri hold to the same effect. (*Cincinnati College* v. *The State*, 19 Ohio, 110; *Detroit, etc., Society* v. *Mayor, etc.*, 3 Mich., 172; *Wyman* v. *City of St. Louis*, 17 Mo., 334.)

" Under a statute of Kansas exempting all property used for religious purposes, it was held that a dwelling-house, owned by the diocese of the Episcopal Church and used by the bishop as a residence, was not exempt. The court said : 'In this case the property is used as any other dwelling, and the use is not distinguishable from that of the residence of any other Christian pastor or Christian gentleman. (*Vail* v. *Beach*, 10 Kan., 214; see, also, *The State* v. *Ross*, 24 N. J. [Law], 497; *Pierce* v. *Inhabitants of Cambridge*, 56 Mass. [2 Cush.], 611; *The First M. E. Church* v. *City of Chicago*, 26 Ill., 482.)

" My conclusion is, that the property in question is not exempt from taxation, and that the assessors simply did their duty in assessing it.

" The proper mode of assessing such property is to deduct the value of the part actually occupied by the corporation from the value of the whole estate, and the society or college should be assessed upon the value of the rest of the property thus ascertained." (Burroughs on Taxation, 134; *Detroit, etc., Society* v. *Mayor, etc.*, 3 Mich., 172.)

586 PEOPLE ex rel. HUTCHINSON v. O'BRIEN.

FOURTH DEPARTMENT, JULY TERM, 1889.

"As no complaint is made by the relators that the valuation is excessive or unjust, it is to be presumed that the assessors adopted the proper rule in making the assessment.

"The prayer of the petitioner is denied and the writ dismissed."

*Avery & Merry*, for the appellants.

*O. M. Reilly*, for the respondents.

MERWIN, J.:

Two propositions are presented by the appellant: First. That the lot upon which the building denominated a parsonage stands is exempt from taxation under subdivision 3 of section 4 of title 1, chapter 13, part 1 of the Revised Statutes, as amended by chapter 397 of 1883. Second. That the assessment is void for not containing a description nor giving the quantity of land to be taxed.

The first proposition is fully discussed by Mr. Justice VANN in the opinion delivered by him at Special Term, upon making the order appealed from. There is no occasion for any further discussion of the subject. We agree with him in his view that the parsonage was not exempt.

The second proposition does not seem to have been raised at Special Term. It is not stated in the writ of *certiorari* as a ground for relief, nor does it appear to have been raised before the assessors, although upon grievance day the relators appeared before them and asked for relief on the other ground. It is, however, stated in the petition upon which the writ was granted. The assessment was against "Trustees First Congregational Church," the property assessed was described "parsonage," and the valuation was entered "$1,600." The description did not mislead the relators. (*Tallman* v. *White*, 2 N. Y., 66.) There was no doubt about the identity. Presumptively, it was so much of the lot as was covered by the parsonage. It was understood to be a real estate assessment, so alleged in substance in the petition. The absence of a statement of the quantity, if important under the charter of the village (chap. 639 of Laws of 1868, as amended by chap. 257 of 1888, tit. 4, § 6), is not a source of any injury to the relators. As said in *People ex rel. Delaware and Hudson Canal Company* v. *Parker* (45 Hun, 432), injury must be shown or the alleged illegality will be unavail-

ing. under the act of 1880. No question is made about the valuation.. We think there is nothing in the form of the assessment that presents. here any good ground for disturbing the order.

The order should be affirmed, with costs.

HARDIN, P. J., and MARTIN, J., concurred.

Order affirmed, with costs.