CONGREGATION GEDULATH MORDECAI, Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, December 30, 1929.

*Herman Scheckner*, for the plaintiff.

*Arthur J. W. Hilly* [*Charles E. Lalanne, William H. King* and *Isaac Phillips* of counsel], for the defendant.

SULZBERGER, J. The plaintiff brings four actions against the city of New York to recover taxes paid under protest for the years 1924, 1925, 1926 and 1927. The plaintiff claims that the taxes were illegally levied because the property was exempt from taxation under section 4, subdivision 7, of the Tax Law (as amd. by Laws of 1927, chap. 565).*

It was agreed by the attorneys for the respective parties hereto that the four actions should be tried together as one.

In 1922 the real property in question was purchased by the plaintiff congregation. The legal title was in the grand rabbi, but the property was held by him for the benefit of the congregation. The building was a three-story affair. The ground floor was used as a synagogue. The grand rabbi lived one flight up. His son, the assistant rabbi, lived on the third floor. Meetings, confirmations and weddings were occasionally held in the rabbi's living quarters.

In 1926 two stores were built upon the premises. They were first rented in 1927. The plaintiff contends, unopposed by the defendant, that under section 892 of the Greater New York Charter (as amd. by Laws of 1911, chap. 455) the taxable status of all property assessable for taxes is fixed on the first of November of the preceding year; that, since the stores were not rented on November 1, 1926, they were tax exempt. For the purposes of this case the court concedes this contention.

Two questions are presented to the court:

*First.* Is the property entirely tax exempt?

*Second.* If the property is partially tax exempt, is it the duty of the court to readjust the tax?

Whether or not property such as this is exempt from taxation is governed by the Tax Law (§ 4, subd. 7). The applicable portion of this section provides: " The real property of a corporation or association organized exclusively for * * * religious * * * purposes, and used exclusively for carrying out thereupon * * * such purposes, * * * shall be exempt from taxation * * *. Property held by any officer of a religious denomination shall be entitled to the same exemptions, subject to the same conditions and exceptions, as property held by a religious corporation."

To entitle property to exemption under this statute, it must be held by a corporation, an association or an officer of a religious

---

* Since amd. by Laws of 1929, chap. 382.— [REP.

denomination. For the purpose of this case the court assumes, but does not decide, that when the taxes were levied this property was held by an officer of a religious denomination.

At the outset it is well to remember that taxation is the rule, and exemption the exception.* Statutes exempting one from taxation are strictly construed against the property holder.† He who claims an exemption has the burden of showing that his case satisfies all the statutory requirements.‡

The second requisite of tax exempt property is that it must be used exclusively for religious purposes.

---

* *People ex rel. Hutchinson* v. *O'Brien* (53 Hun, 580, 582): "If a liberal construction of this statute would include a parsonage under the description of a building for public worship upon the ground that it indirectly promoted that object, the strict construction that is uniformly applied to the subject by the courts of all the States and of the United States, without exception, does not permit that conclusion. A building used solely for a private residence, and in which public worship is never held, is not a building for public worship. The public have no more right to enter a parsonage, occupied by the clergyman and his family, for public worship, than they have to enter the residence of any member of the congregation for that purpose. *A parsonage is not used for public worship, but is simply the residence of the pastor who conducts public worship in another building devoted exclusively to that object.* * * *

"The statute, when strictly construed as the law requires, limits the exemption to a building actually used for public worship, and does not include a building the income or use of which is devoted to the support of the pastor."

*Matter of Mary Immaculate School of Eagle Park* (188 App. Div. 5): "The building occupied by the chaplain, and the other structure which houses the farmer, are places of residence, within the common inclosure, which are regarded as included in the school's educational purposes. (*State* v. *Ross*, 24 N. J. Law, 497; *Phillips Academy* v. *Andover*, 175 Mass. 118; *Amherst College* v. *Assessors of Amherst*, 193 id. 168; *Yale University* v. *New Haven*, 71 Conn. 316; 43 L. R. A. 490.) The appellant cites *People ex rel. Church of St. Mary* v. *Feitner* (168 N. Y. 494) as to the $2,000 exemption for a religious corporation. Unlike the case of an exemption for a religious corporation under subdivision 9 of section 4 of the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62) the chapel exercises in an educational or charitable institution are properly institutional, and are as much a requisite as scholastic studies. On the other hand, the provision for the clergy house of religious corporations, under subdivision 9 of section 4, is distinct from that here involved. To avoid doubt, that statute expressly states that such $2,000 exemption is to be 'in addition to that provided by subdivision seven of this section.'"

37 Cyc. 944: "And even though the statute exempts church property used 'for religious purposes,' this is held not to include the rectory or parsonage. * * *"

† *People ex rel. Delta Kappa Epsilon Soc. of Hamilton College* v. *Lawler* (74 App. Div. 553, 557); *Young Women's Christian Assn. of City of New York* v. *City of New York* (217 id. 406; affd., 245 N. Y. 562): "The tax assessors having jurisdiction, the assessment was not illegal. There probably was an overvaluation by the improper inclusion of exempt property. This at most was an error in valuation and not a lack of power to assess the premises as a whole."

‡ *People ex rel. Medical Soc.* v. *Neff* (34 App. Div. 83, 85).

Whether or not property is "exclusively used" for a certain purpose is a question of degree. It depends upon the particular facts and circumstances. If certain property was used almost entirely for a religious purpose, and the non-religious use was incidental and necessary, the court would say: "The property is still used exclusively for that purpose." An incidental, necessary use is one where a janitor or engineer lives in a place of worship.

How is the property used here? The ground floor was used as a synagogue. So far the property is tax exempt. But not so with the next two floors. Property used as a dwelling for a rabbi or assistant rabbi is not used exclusively for religious purpose within the statute.* The home, even of a religious man, is a place to eat, to sleep, to entertain friends. These are non-religious uses of property. This is true even though the rabbi's residence is sometimes used for meetings, confirmations and weddings.

The Legislature did not intend to include a minister's dwelling house, though owned by the congregation, in its subdivision exempting from taxation property used exclusively for religious purposes. Section 4, subdivision 9, provides: "All dwelling-houses and lots of religious corporations while actually used by the officiating clergyman thereof, but the total amount of such exemption to any one religious corporation shall not exceed two thousand dollars. Such exemption shall be in addition to that provided by subdivision seven of this section."

Note the last sentence particularly. This subdivision was not inserted to limit subdivision 7, rather to extend it.† But for subdivision 9 a dwelling house would be entitled to no exemption; with it, it receives a $2,000 exemption.

Whether or not the religious corporation's dwelling house for its officiating clergyman is next to the synagogue or is added to it in the shape of an extra floor seems immaterial to the court. It is merely a difference in form, in the methods of building construction. The dwelling house of a rabbi is not used exclusively for religious purposes whether it is on top of a synagogue or whether it adjoins it.

Viewing the property as a whole, the court finds that: One floor is used entirely for religious purposes; two floors are used mainly for non-religious purposes. The court's conclusion must be that the property is not entirely tax exempt.

Part of this property is tax exempt; part of it is not. The assessors taxed the whole property as if it were used wholly for non-religious purposes. Should this court return so much of the

---

* *People ex rel. Hutchinson* v. *O'Brien (supra)*; 37 Cyc. 943.

† *Matter of Mary Immaculate School of Eagle Park* (188 App. Div. 5); *People ex rel. Society of Free Church of St. Mary the Virgin* v. *Feitner* (168 N. Y. 494).

tax that was improperly assessed, or should that be done by the board of assessors?

If the board of tax assessors had no jurisdiction to tax the property, then the levy is illegal and the tax should be returned. Were the whole property exempt from taxation, the board would have no jurisdiction.* Where part of the property is tax exempt, and part is not, the administrative body has jurisdiction of the subject-matter.† If they have jurisdiction, and then improperly tax exempt property, they have acted erroneously, not illegally. Such is the case here. The plaintiff has not pursued the proper remedy.

Judgment for the defendant.

---

* *National Bank of Chemung* v. *City of Elmira* (53 N. Y. 49, 53, 54).

*Young Women's Christian Assn. of City of New York* v. *City of New York* (220 App. Div. 49, 51; affd., 247 N. Y. 591): "In discussing instances where assessors have and where they are without jurisdiction, a case quite analogous to the case now under consideration was called to attention. It was said ([*National Bank of Chemung* v. *City of Elmira*, 53 N. Y.] p. 54): ' *Weaver* v. *Devendorf*, 3 Den. 117, 118, will serve to show the distinction between a case where the assessors have jurisdiction and where they have not. That was an action by a minister for not allowing him the statutory exemption of $1,500. It appeared that he had more property than the amount of the exemption, and was therefore, taxable. The assessors had jurisdiction to act, and were not liable for making the assessment too high. BEARDSLEY, J., said: "It was, therefore, not a case in which the property of the plaintiff was totally exempt from taxation, and over which the defendants had no jurisdiction whatever, but one in which they were authorized and required by law to make an assessment of the property, even if the owner was a minister of the gospel." The case was properly decided upon the ground that, in fixing the value of property, the power exercised is judicial.' "

*National Bank of Chemung* v. *City of Elmira* (53 N. Y. 49, 53): "Some of the duties of assessors are judicial in their nature, and as to these, when acting within the scope of their authority, they are protected from attack, collaterally to the same extent as other judicial officers; but they are subordinate officers, possessing no authority, except such as is conferred upon them by statute, and it is a well settled and salutary rule that such officers must see that they act within the authority committed to them ([*Mygatt* v. *Washburn*] 15 N. Y. 316, 321, and cases cited). When they have no power to act at all in a given case, either as to person or property, their acts are void. So when their right to act depends upon the existence of some fact, which they erroneously determine to exist, their acts are void. So in performing a ministerial duty their acts are void, if not in accordance with law. But having jurisdiction of the person and subject matter, if they err in the exercise of it, they are protected."

† *National Bank of Chemung* v. *City of Elmira* (*supra*, 53 N. Y. 49, 54); *Young Women's Christian Assn. of City of New York* v. *City of New York* (217 App. Div. 406, 410; 220 id. 49, 51).