William C. Hecht, Jr., J.
This is a proceeding pursuant to article 78 of the CPLR for an order directing the Comptroller of the City of New York to audit and allow or, in the alternative, to audit and allow in his discretion, claims of St. Luke’s Hospital for refund of overpayment of New York City real estate taxes for the years 1958-59, 1959-60, 1960-61 and 1961-62.
The claims were denied by the Comptroller on March 13, 1964. Petitioner claims this denial constituted a failure to perform a duty enjoined upon him by law, or was effected by error of law, or was arbitrary and capricious or an abuse of discretion.
Respondent, Comptroller of the City of New York, contends that he lacked power to allow the claim, inasmuch as authoriza *73 tion to revise erroneous tax assessments on real property is lodged by statute exclusively in the Tax Commission of the City of New York and in the courts.
Petitioner is a private, nonprofit hospital corporation in the Borough of Manhattan. In addition to its main hospital building, it is, and for many year has been, the owner of a group of apartment buildings located in close proximity to the hospital.
A portion of each of the apartment buildings is occupied, in varying percentages, as living accommodations by personnel, chiefly doctors and nurses, employed by the hospital. But the remaining balances are occupied by ordinary rent-paying tenants having no connection with the hospital.
Real property taxes were imposed on these properties and paid by the petitioner, without objection, from the time of their acquisition until the tax years 1956-57 and 1957-58. In those years, the petitioner filed applications for exemption from taxation, in whole or in part, with the Tax Commission of the City of New York, on the ground of the property’s use to house hospital personnel. The Tax Commission denied the applications.
Thereafter, petitioner commenced judicial proceedings, pursuant to article 13 of the State Tax Law (now art. 7 of the Real Property Tax Law) and chapter 7 of the New York City Charter and chapter 7 of the Administrative Code of the City of New York to review the Tax Commission’s determination. These proceedings, after a decision for the petitioner at Trial Term, which was reversed in favor of the city by the Appellate Division, First Department (15 A D 2d 776), culminated in a decision by the Court of Appeals that the apartment houses were entitled to exemption by virtue of subdivision 6 of section 4 of the Tax Law to the extent of the proportionate value of the portion used exclusively as living accommodations for. hospital personnel, but that the remaining or other portions were not entitled to exemption and were subject to taxation (Matter of St. Luke’s Hosp. v. Boyland, 12 N Y 2d 135 [1962]).
During the intervening tax years, while the above litigation was in progress (1958-59, 1959-60, 1960-61 and 1961-62), which were not included therein, the property continued to be used partly by hospital personnel and partly rented to other tenants on a commercial basis. It was subjected to full taxation and no exemptions allowed. Although the petitioner paid these taxes under protest, it never applied to the Tax Commission or instituted ally proceedings pursuant to the Tax Law and Charter and Administrative Code to review the tax assessments for these years.
*74 Subsequent to the aforesaid decision in Matter of St. Luke’s Hosp. v. Boyland, petitioner filed a claim with the Comptroller on September 20, 1963 for refund of the proportionate amounts of 1958-59, 1959-60, 1960-61 and 1961-62 taxes attributable to the portions of its said properties occupied by hospital personnel.
Respondent claims that the exclusive remedy for contesting an “ erroneous ”, as distinguished from an “ illegal” assessment,is the remedy at law set up by the statutes of applying to the Tax Commission for relief and then commencing certiorari proceedings in the courts (Young Women’s Christian Assn. v. City of New York, 217 App. Div. 406, affd. 245 N. Y. 562; Sikora Realty Corp. v. City of New York, 262 N. Y. 312; National Bank of Chemung v. City of Elmira, 53 N. Y. 49), and that an action at law for money had and received may not be maintained to recover overpayments due to erroneous assessments where the statutory procedure is not followed by the taxpayer (Swift v. City of Poughkeepsie, 37 N. Y. 511; Broderick v. City of Yonkers, 22 App. Div. 448, affd. 163 N. Y. 571; Congregation Gedulath Mordecai v. City of New York, 135 Misc. 823). Petitioner concedes that this is the law and that it governs the vast majority of fact situations which may arise. It maintains, however, that this rule should not be applied to the particular facts of this case. The distinguishing facts, as claimed by petitioner, are as follows:
Robert M. Peers, Esq., was counsel for petitioner in the certiorari proceedings, and Daniel Muccia, Esq., Assistant Corporation Counsel, represented the city. Mr. Peers states that prior to trial, he discussed with Mr. Muccia the method for most expeditiously securing a final determination of the law. Mr. Muccia told Mr. Peers the matter was one of such far-reaching import to the city that, even if the hospital prevailed, the matter was one which would be carried to the Court of Appeals, and Mr. Peers informed Mr. Muccia that the hospital would also feel bound to appeal, in the event of an adverse determination.
Mr. Peers further states that he pointed out to Mr. Muccia that, faced with the prospect of a long litigation of a matter of such importance to both parties, if the prescribed procedure were followed for the year 1958-59 of filing again with the Tax Commission and commencing another action for review, and repeating the procedure for each ensuing year until the Court of Appeals decided the question, both Mr. Muccia’s office as well as Mr. Peers’, .would be uselessly forced into -.multiple trials and appeals on the same single issue of law and diverted from exerting their whole best efforts on the trial and appeal of the two test years.
*75 Mr. Peers further suggested to Mr. Muceia that they dispense with this formality for the year 1958-59 and the ensuing years, with the understanding that the' hospital would continue to pay the taxes “ under protest ” and that its right to a refund would not be prejudiced even if the result was that the hospital would be found only to be entitled to a partial exemption. Mr. Peers admits that Mr. Muceia did not affirmatively represent that he had authority to bind the city to adopt the suggested procedure, but that Mr. Muceia, nonetheless, made no objection to it.
The hospital’s counsel states that he relied upon their alleged arrangement and accordingly refrained from filing applications with the Tax Commission between February 1 and March 15 in the years 1958, 1959,1960, 1961 and 1962, and from commencing, in the courts, bringing to trial and appealing petitions for review.
Mr. Muceia, in his affidavit submitted in opposition to this application, denies that he acquiesced in the procedure followed by Mr. Peers and states: 66 If I had been aslced whether or not it was necessary to file applications and petitions in future years with reference to a claim for partial exemption on the ground of over-valuation, then in that case, I would either have said filing of applications and petitions was necessary, or that I could not advise the petitioner since my responsibility was to advise the City, not its opposition ”.
The error in petitioner’s argument is that there was an appropriate method of preserving petitioner’s rights in respect of the years herein which would not have involved unnecessary litigation. There was nothing to prevent petitioner from filing petitions for exemption from taxation, in whole or in part; and in the event of denial thereof by the Tax Commission, the institution of judicial proceedings similar to those instituted for the years 1956-57 and 1957-58. It may be assumed that there would be no difficulty in arranging an appropriate stipulation with the Corporation Counsel to defer trial of these matters, pending final determination of the proceedings affecting 1956-57 and 1957-58. If the Corporation Counsel would not so stipulate, the court could have directed a stay of the action pending such determination. Such a procedure would have protected the rights of petitioner in accordance with the statutory requirements.
Petitioner contends that, under the provisions of the New York City Charter and Administrative Code, the Comptroller not only has the power, but the duty, to allow the claims “ on the particular facts in this case ”.
*76 Examination of the pertinent provisions and the decided cases does not support petitioner’s contention.
Subdivision d of section 93 of the New York City Charter provides that the Comptroller: “ shall have power to settle and adjust all claims in favor of or against the city in such manner as shall be prescribed by law ’ ’ and section 93d-1.0 of the Administrative Code, specifies that: “In adjusting and settling such claims, the comptroller, as far as practicable, shall be governed by the rules of law and principles of. equity which prevail in courts of justice. ’ ’
In addition, section 93d-3.0 of the Administrative Code authorizes the Board of Estimate to inquire into and determine any claim certified to it by the Comptroller as “ illegal or invalid ” but which, notwithstanding, in his judgment it is “ equitable and proper ” for the city to pay in whole or in part. “ If, upon such inquiry, the board of estimate, by a unanimous vote determines that benefits have been received by the city or any agency and that public interests will best be served by payment or compromise thereof, it may authorize payment of such claim ’ ’. But “ The provisions of this section shall not authorize the audit or payment of any claim barred by the statute of limitations ”.
It has long been recognized that taxes are not ‘1 claims ’ ’ which the Comptroller may compromise under the authority of the foregoing provisions. The Legislature has vested that authority in the Tax Commission and the courts. Thus, in People ex rel. New York Edison Co. v. Prendergast (185 App. Div. 461 [1st Dept., 1918], affd. 226 N. Y. 573 [1919]), the relator brought mandamus against the Comptroller to require consideration of its claim for a refund of a portion of taxes assessed ag-ainst its real property, in which assessments it was claimed there had been included certain property not subject to tax. In considering the language of section 246 of the former Greater New York Charter, virtually identical to that now contained in section 93d-3.0 of the Administrative Code, the court had this to say (p. 463): “ apart from the statutory relief afforded by certiorari proceedings, this section of the charter was not, in my opinion, intended to cover all claims that might in good morals be asserted against the city, but covered cases only where the city had been benefited by work done or material furnished and used by it for city purposes. Sanctioning such a course as that permitted by the decision appealed from, so as to include applications for refund of taxes, would tend to open up a flood of claims against the city and put it in the power of a temporary administration to make payments to favored persons. * * * The order *77 should be reversed, with costs and disbursements, and petition dismissed, with costs.” (See, also, Brighton-by-the-Sea Corp. v. City of New York, Supreme Ct., Kings County, N. Y. L. J., Feb. 24, 1915, p. 2018, col. 1).
The relief sought by petitioner from the Comptroller would be illegal, ultra vires and beyond his powers. The proceeding is dismissed.