(31 Misc. Rep. 565.)

PEOPLE ex rel. NATIONAL ACADEMY OF DESIGN v. FEITNER et al.,
Commissioners of Taxes.

(Supreme Court, Special Term, New York County. May, 1900.)

TAXATION—USE OF PROPERTY—EDUCATIONAL PURPOSES—EXEMPTION.

Under Tax Law (Laws 1896, c. 908) subd. 7, § 4, providing that the real property of any association which is held exclusively for mental or moral improvement, or educational, scientific, or literary purposes, and from which no rents, profits, or income are derived, shall be exempt from taxation, though not in actual use therefor, by reason of the absence of suitable buildings, or where the construction of such buildings is in progress or is in good faith contemplated by such association, where an association for the cultivation of art had purchased lots on which to erect buildings to carry on their work, and had accepted plans for such buildings, but had not proceeded to erect them on account of the unsettled condition of finances, but intended in good faith to do so, such lots are exempt from taxation.

Certiorari by the people, on relation of the National Academy of Design, to review the action of Thomas L. Feitner and others, commissioners of taxes, in placing property of the relator on the assessment roll. Assessment vacated.

Benjamin F. Lee, for relator.

James M. Ward, for respondents.

NASH, J. This is a proceeding by certiorari brought to set aside an assessment of real property to the relator, an association which has been in existence since 1828, incorporated, as stated in its charter, for the purpose of the "cultivation of the arts of design." The relator, the National Academy of Design, claims exemption from taxation under section 4, subd. 7, Tax Law (chapter 908, Laws 1896), which provides that:

"The real property of an association or corporation organized exclusively for the mental or moral improvement of men or women, or for religious, Bible tract, charitable, benevolent, missionary, hospital, infirmary, educational, scientific, literary, library, patriotic, historical or cemetery purposes, or for the enforcement of laws relating to children or animals, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes, and the personal property of such corporation or association, shall be exempt from taxation." "The real property of any such corporation or association entitled to such exemption, held by it exclusively for one or more of such purposes, and from which no rents, profits or income are derived, shall be so exempt, though not in actual use therefor by reason of the absence of suitable buildings or improvements thereon, if the construction of such buildings or improvements be in progress, or is in good faith contemplated by such corporation or association."

The association was the owner of the premises corner of Twenty-Third street and Fourth avenue, where it had been located since late in the 50's, having put up the building there during the Civil War. At the time of the assessment the relator had sold the Twenty-Third street premises, but occupied the same as a tenant of the owner, to whom it had sold in 1895, and had purchased a new site, consisting of vacant lots on Amsterdam avenue, between 109th street and Cathedral Parkway. The Twenty-Third street premises, as the property of the association, were deemed exempt from taxation, but the property in question, being apparently vacant lots and unoccupied, were, by the commissioners of taxation and assessment, regarded as property subject to taxation, and the lots were therefore placed upon the assessment roll of 1898. The evidence shows that these lots were purchased by the association for the purpose of erecting thereon buildings for its exclusive use, suitable for the purposes of its organization. The purchase of the lots was made in March, 1897, and the association commenced immediately to take steps looking to the erection of buildings upon these premises. It was proposed and adopted by the council of the association to institute a limited paid competition of six architects and firms of architects, each competitor, except the one chosen as the architect of the proposed buildings, to be paid $500. There were six competitors who entered into the competition, and the jury selected for the purpose awarded the first place to the firm of Carrere & Hastings as the successful competitor.

The report of the jury was accepted by the association, and it paid to the unsuccessful competitors $2,500, and to the successful firm $3,500. Drawings and specifications for such portions of the new buildings as it was at first proposed to erect were made and accepted, and excavations and borings were made on the premises by the architects, for the purpose of investigating the soil and rock foundation of the site, at an expense of several hundred dollars. The proceedings of the council of the association, and the work which has been mentioned, continued through the year 1897, and until May 23, 1898, when a resolution was adopted by the council that, "in view of the unsettled state of finances generally occasioned by the war, the council considers it unwise to take any action regarding the making of any contracts for the construction of the new building." At the hearing of the proceeding in January of this year it appeared that "building operations by the association on this land had been lately resumed." It seems to me the case clearly shows that at the time of the assessment the construction of the buildings upon the new site was in good faith contemplated by the association, and also it may be said that the construction of such buildings was then in progress. The statute contains the further provision that "no such corporation or association shall be entitled to any such exemption if any officer, member or employé thereof shall receive, or may be lawfully entitled to receive, any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes." The members of the association or academy are divided into three classes, viz.: Academicians, elected from the body of associates and professional honorary members; associates, chosen from professional artists only; and honorary members, chosen from artists, amateurs, and lovers of the arts. The officers are a president, vice president, corresponding secretary, recording secretary, treasurer, and six members of council, the whole elected from the body of academicians constituting the board of council. It is suggested that some of the members of the association receive a salary, and therefore the corporation is not entitled to exemption. The proof is that students who become members of what is called the "School of Design" pay a matriculation fee of $10. They do not pay tuition fees. Only such persons as, under certain requirements, have made drawings approved by the school committee are eligible as students. The instructors are academicians,—members, but not officers, of the association. Some of the instructors are paid by the association, and some do not receive pay. Matriculation fees go into what is called the "school fund." The charter provides that the funds of the society shall be employed in promoting the cultivation and extension of the arts of design. It was not made to appear how the institution obtained its funds any further than by its charter it is authorized to take, receive, and hold real and personal property to any amount, by grant, gift, devise, or bequest, for the proper use and purposes of the society. Its by-laws provide that every academician-elect shall present to the academy a specimen of his art, to be preserved in the gallery of the academy, and to be the property of the institution. There is also a provision in the by-laws for a fund

separate from the ordinary treasury of the academy, called the "fellowship fund," formed by subscriptions of money, proceeds of pictures or other works of art presented, and by grants of fellowship, devoted to sustaining the school and generally advancing the interests of the academy. It thus appears that no officer, member, or employé of the association receives any pecuniary profits from the operations thereof, except that the instructors are members, some of whom receive a salary. They are instructors of students of the association, and their services must, I think, be regarded as effecting one of the purposes for which the association was formed. It is fair to presume that they do not receive for their services any more than a reasonable compensation. I am of the opinion, on the whole case, that the property of the relator is exempt from taxation, and that the lots it has purchased for a new site were exempt from assessment. The property was apparently subject to assessment. The affidavit filed by the relator with the respondents to obtain the exemptions, verified April 1, 1898, stated, without explanation, that a school building for art students was then being erected, and it was expected it would be completed by December 1, 1898. Upon the filing of this affidavit the tax commissioners caused a re-examination of the premises to be made, and it being found that the lots were still vacant, nothing apparently having been done towards the construction of a building thereon, they determined, as they properly might upon the facts before them, that the assessment should be confirmed. An order may be entered vacating the assessment, but, under the circumstances, it should be without costs.

Ordered accordingly.