SAINT BARBARA'S ROMAN CATHOLIC CHURCH, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

Second Department, February 25, 1935.

*John M. Gaston, Jr.* [*Paul Windels, Corporation Counsel, Oscar S. Cox* and *Thomas J. Condon* with him on the brief], for the appellant.

*Franklin M. Tomlin,* for the respondent.

CARSWELL, J. Plaintiff brought an action to cancel taxes for the years 1921 to 1932, levied upon 137 Menahan street, Brooklyn. It has prevailed, and the city of New York appeals.

The three-story frame building involved is upon a lot which is part of a larger plot containing a church, a rectory, a sisters' home, a convent and a parochial school. The building in question immediately adjoins the parochial school.

Plaintiff concedes that the rectory is not entitled to exemption. Defendant concedes all the other units are entitled to exemption, but insists that this frame building is taxable.

The parcel in dispute was acquired by plaintiff on June 26, 1914. Since then it has been used as a place of residence of the group of

members of the Society of Mary who are of the teaching staff of the parochial school. The members of that society take religious vows of poverty, chastity, obedience and stability. They devote themselves principally to the education of youth, and are engaged in preaching and other works of holy ministry. They are obligated to live in common under a superior or director, and to divide their time between prayer and labor, with only necessary relaxation. The rules require that there be a chapel in the community house where mass is celebrated each day, and they are required to attend prayers in common.

To obtain the services of the members of this society as teachers in the parochial school, the church must make an agreement to provide quarters in which they may live in common in accordance with the rules of their society.

A small part of this building occasionally is used for special instruction of backward children brought from the adjoining parochial school.

The applicable statute is subdivision 7 (now subdivision 6) of section 4 of the Tax Law, which, so far as pertinent, reads: " The real property of a corporation or association organized *exclusively* for the moral or mental improvement of men or women, or for *religious,* * * * *educational* * * * purposes, or for the enforcement of laws relating to children or animals, or for two or more such purposes, and *used exclusively for carrying out thereupon one or more of such purposes,* and the personal property of any such corporation shall be exempt from taxation." (As amd. by Laws of 1929, chap. 382. Tax Law, § 4, subd. 7 was renumbered subd. 6 and amd. by Laws of 1933, chap. 470.)

The city argues that the property is not used for religious purposes within the statute, because the devotional services therein are not open to the public; they are the private religious devotions of the members of the society resident in the community house. There is nothing in the statute that requires that religious services must be open to the public to enable the structure in which they are conducted to become entitled to exemption from taxes. If the city's view were to obtain, property in which cloistered orders are housed and in which the members thereof perform their religious duties and conduct their religious services would be taxable. They have never been so held. The view contended for by the city is too narrow.

A building devoted to the religious uses of a semi-cloistered order such as this Society of Mary is not in principle to be distinguished from a building of a cloistered order. The religious devotions and exercises in both are not open to the public and are exclusively for

the members thereof. Accordingly, the building herein is used exclusively for religious purposes within the meaning of the statute quoted. It is, therefore, exempt from taxation. (*People ex rel. Church of St. Mary* v. *Feitner*, 168 N. Y. 494, 497.)

The occasional use of a single room for instruction of backward children from the adjoining parochial school does not militate against this conclusion. It merely reinforces its propriety on another ground, to wit, that the building is a segment of the entire articulated system of an institution devoted to education and entitled to exemption as a part of such an institution. (*People ex rel. Trustees* v. *Mezger*, 98 App. Div. 237, 239.)

The parochial school itself is exempt, as no income or profit is derived. (*Matter of Mary Immaculate School*, 188 App. Div. 5.) The housing of its teaching staff in that building would not cause the school to lose its exemption. The requirement that these teaching members of this society live in communal fashion and happen to be domiciled in a separate building adjoining the school should result in no different conclusion. The building is put to a use incidental to that of the parochial school in furtherance of the school's educational activities.

The entire system of an educational institution is entitled to an exemption which is not limited to rooms or parts of buildings. (*Matter of Syracuse University*, 124 Misc. 788, 798; affd., 214 App. Div. 375.) There the residence of the chancellor on the university grounds was held not to be taxable, because it was part of the educational institution and was needed to further the objects of the corporation organized for educational purposes.

There is as much if not more reason for exempting the place of residence of this portion of the teaching staff of this parochial school than there was for exempting in that case the residence of the chancellor. It was there said (214 App. Div. 375, 377): " The occupation by the chancellor of the official residence furnished him by the university is clearly an educational purpose, and makes that property exempt from taxation under the statute."

Cases to the contrary from other jurisdictions may not be followed.

The city invokes the rule that exemptions from taxation are to be strictly construed and thus limited in their scope. It is true that the rule of strict construction is pertinent to exemptions, but it is to be applied in the light of the purposes to be furthered by the exemptions, so as not to thwart those purposes. Here, that purpose is to encourage and assist religious and educational activities, to the end that the community may benefit from the moral, social and cultural betterments consequent upon these activities. When

thus applied, the building in question must be deemed to be in effect a part of the parochial school and, therefore, devoted to a use for educational purposes, aided substantially by the beneficent and unselfish services of the members of the society who conduct educational activities therein.

No doubt this parochial school is enabled to function, to the advantage of the State and city, in large measure through the services of the members of this society. The taxes which the Legislature by the statute quoted requires the city to forego are infinitesimal in amount compared with the cost to the community to educate the pupils of this parochial school should it become necessary to do so by different public facilities. The purely monetary benefit which accrues to the city through this exemption by the Legislature far exceeds in amount the taxes canceled.

The building lot in question is owned by the plaintiff, which is concededly a religious corporation. It is " a corporation  *  *  * organized *exclusively* for the moral or mental improvement of men or women, or for *religious,*  *  *  *  *educational*  *  *  * purposes." The property is " used *exclusively* for carrying out *thereupon* one or more of such purposes."

Accordingly, as the building is devoted to a religious use or an educational use, or both, the judgment canceling the taxes is correct and should be affirmed.

Present — LAZANSKY, P. J., YOUNG, CARSWELL, SCUDDER and JOHNSTON, JJ.

Judgment unanimously affirmed, with costs.