

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

Honorable Jim D. Bowmer
County Attorney
Bell County
Belton, Texas

Opinion No. V-09

In Re: Exemption from taxa-
tion of certain
property owned by the
Episcopal Church at
Belton, Texas, used
as a dormitory for
Episcopal girls at-
tending Mary Hardin
Baylor College.

Dear Sir:

You present for the opinion of this department
the question contained in your letter of December 20,1946,
which is copied below for a statement of the facts upon
which our opinion will be based. Your letter follows:

"The tax assessor-collector of this county
has asked me to obtain your opinion on the fol-
lowing tax problem which has arisen.

"The Episcopalian Church Diocese for Texas
owned and maintained a house in Belton, Texas,
from about 1929 to about 1940, as a dormitory
for Episcopalian girls attending Mary Hardin
Baylor College, a Baptist college. It is pre-
sumed they paid their room and board in the
same manner as if they had been residing at
the normal college-owned dormitory. The dorm-
itory itself was not an official part of the
school. The school itself, its dormitories,
etc., are tax exempt. The Episcopalian Church
has not rendered this house for taxation, and
has recently sold it. The problem now arises
as to its exemption from taxes during the
years it was so used.

"We would greatly appreciate your opinion
as to the propriety of exempting this property
from State and County taxes when it was used
for the above purposes, both prior to and after
the 1931 amendments to Article 7150."

(1) It appears from the admitted facts that the Episcopal Church, Diocese of Texas, owned and maintained a house in Belton, Texas, from 1929 to about 1940, as a dormitory for Episcopal girls attending Mary Hardin Baylor College, a Baptist College;

(2) The girls paid room and board in the same manner as if they had been residing at the dormitories owned and maintained by the College;

(3) The dormitory was in no way an official part of the College; and

(4) The Episcopal Church did not render this dormitory for taxation during the time it was so owned and maintained.

The question presented is the status of this property for ad valorem taxes for the period of time it was thus owned and maintained by the Episcopal Church; that is, whether taxable or exempt.

Certain types of property are exempt from taxation by the express terms of the Constitution, and this the Legislature has no power to tax. Lower Colorado River Authority v. Chemical Bank & Trust Co. (Supreme Court) 190 S. W. (2d) 48. Other kinds of property, and the property here in question is of that character, may be exempt from taxation by the Legislature only by the authority conferred upon it under the Constitution of this State. This power is derived from Section 2 of Article VIII of the Constitution, which reads in part as follows:

> ". . . the legislature may, by general laws, exempt from taxation . . . all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools and property used exclusively and reasonably necessary in conducting any association engaged in promoting the religious, educational and physical development of boys, girls, young men or young women operating under a State or National organization of like character;. . ."

Pursuant to the authority thus conferred upon the Legislature by Sec. 2 of Article VIII of the Constitution as quoted above, the Legislature enacted Art. 7150, R. C. S., in language in part as follows:

> "All public colleges, public academies, and all endowment funds of institutions of learning and religion not used with a view to profit, and when the same are invested in bonds or mortgages, <u>and all such buildings used exclusively and owned by persons or associations of persons for school purposes;</u>"

If the dormitory here in question is exempt from ad valorem taxes, it must be by virtue of the terms of Art. 7150 quoted above. The exemption from taxation of dormitories owned and maintained by the College proper is not questioned. But does the same rule apply to the dormitory here in question owned by the Episcopal Church, a religious organization, that has no official connection with the College? We have no difficulty in classifying the Episcopal Church as an "association of persons," but our difficulty arises in determining whether or not the dormitory is used "exclusively for school purposes," and whether or not under the terms of Art. 7150, such building must be used and maintained by the College as contra distinguished from owned and maintained by a separate religious organization which has no official connection with the College. A careful search of the opinions of this department and decisions of our appellate courts fail to reveal that this identical question has been passed upon by this department or the courts of this State. We think it may be correctly said that the young ladies occupying this Episcopal Church dormitory constitute as much a part of the student body of the College as do the young ladies occupying the dormitories owned and maintained by the College. If one is used for school purposes, we see no plausible reason why the other might not likewise be so considered.

Courts of other jurisdictions have had occasion to consider what constitutes "school purposes" under certain tax exemption statutes similar to the one we have in Art. 7150, and we take occasion here to note some of these decisions. In the case of In Re: Syracuse University, 212 N. Y. S. 253, (Supreme Court, Appellate Division, State of New York) the Court made a comprehensive statement as to the meaning of the term "school purposes" in the following language:

"Dormitories, dining halls, hospitals, training schools for nurses and stores for supplies, and athletic fields used by the students for athletic games and exercises, and not as sources of institutional income, are essential parts of universities and colleges; for education contemplates, not only the mental and moral, but the physical training and welfare, and the proper maintenance of those in attendance upon the institution. People ex rel. Board of Trustees of Mt. Pleasant Academy v. Mezger et al., 98 App. Div. 237, 90 N.Y.S. 488, affirmed 181 N.Y. 511, 73 N.E. 1130; State v. Carleton College, 154 Minn. 280, 191 N.W. 400; People ex rel. Adelphi College v. Wells et al., 97 App. Div. 312, 89 N.Y.S. 957, affirmed 180 N.Y. 534, 72 N.E. 1147. It does not appear that any profit is derived by the university from amounts paid by students for residences, food, or hospital care.

"So, too, the university farm, used for demonstration and instruction purposes, is an appropriate part of the university equipment, and comes within the same general category hereinbefore mentioned.

"The occupation by the chancellor of the official residence furnished him by the university is clearly an educational purpose, and makes that property exempt from taxation under the statute. In re Mary Immaculate School of Eagle Park, 188 App. Div. 5, 175 N.Y.S. 701, and cases cited."

In the case of State v. Fisk University, 10 S.W. 284, (Supreme Court of Tennessee) the Court said:

"To give the language of the constitution the strict construction contended for by the complainants would lead to excluding every portion of the property not actually used in education. It would include only school buildings, desks, books, etc., and would exclude ornamental promenade grounds, play-grounds, and gymnasium buildings, and infirmary or hospital buildings for the pupils. The agreed case fails to show that any of this property is used for profit, or for purposes not embraced within the duties of the defendant, as an institution of learning.

"There are many adjudged cases from different states, and much in the textbooks, which are not easily to be reconciled, growing out of exemptions somewhat similar to those under consideration here. It is not our aim at this time to discuss these cases, nor to define nor limit what uses may or may not be within the exemptions referred to. We only decide that the intention of the legislature must govern in ascertaining the extent of such exemptions, and that in arriving at such intention the same strictness of construction will not be indulged where the exemption is to religious, scientific, literary, and educational institutions that will be applied in considering exemptions to corporations created and operating for private gain or profit...."

A more recent case by the Supreme Court of Tennessee than the one first noted is the case of City of Memphis v. Alpha Beta Welfare Association, 126 S.W. (2d) 323, in which we find a statement of facts and a pronouncement of the law which we deem helpful in consideration of the problem here considered, as follows:

"The Alpha Beta Chapter of the Phi Chi Medical Fraternity in the Medical School of the University of Tennessee, at Memphis, is unincorporated. Its membership is made up of the alumni of the Phi Chi Fraternity re-

siding in the City of Memphis, who are in
good standing, and the active members of
the chapter are the undergraduates of the
Medical School.

"The specific purpose of the Phi Chi
Medical Fraternity is to promote the wel-
fare of medical students morally and sci-
entifically. For admission to the active
chapter, a student must be desirable from
a scholastic and moral standpoint. No one
is eligible for membership in the active
chapter except matriculants in the Univer-
sity of Tennessee Medical Department.

"Prior to the organization of the As-
sociation, in 1930, the student members of
the Alpha Beta Chapter of the Phi Chi Fra-
ternity were living in boarding houses,
scattered around over the city, the Univer-
sity being without dormitories. As the re-
sult of the appeal of the then undergradu-
ate members of the Fraternity, a number of
the leading doctors of Memphis interested
themselves in organizing the Welfare Asso-
ciation in order that suitable property
might be acquired and the student members
of the Fraternity housed under one roof.
This was considered very essential to the
welfare of these members and to the success-
ful carrying out of the purposes of the
Fraternity.

"It appears that about fifty students
live in the house in question and each one
pays $37.50 per month, which covers board,
lodging, and Fraternity dues. They main-
tain a mess, with which the Association
has nothing to do. Supervision is exer-
cised by the Association over the physical
condition of the premises and over the con-
duct of the student residents. A high
standard of moral and ethical conduct is
demanded.

"It is shown that the alumni of the
Phi Chi Chapter have furnished the students
with a considerable number of books, the
majority of which are medical in their

scope; but others are upon subjects of general information and interest. Additional books are being added to this library from time to time.

"No teaching staff is maintained by the Association or by the Fraternity. No classes of any kind are conducted on the premises. However, other things of a cultural and educational nature are relied on as entitling the Association to tax exemption. . . ."

"In the instant case, both the trial judge and the Court of Appeals have determined that the property in question is used exclusively for educational purposes and with this finding we feel constrained to concur..."

In the case of Ward Seminary for Young Ladies v. Mayor, et al., of Nashville, 167 S.W. 113, (Supreme Court of Tennessee) the following general statement was made as to what constitutes "school purposes":

"The result of the whole case is that we hold the property of the complainant which is in reality used in educational work, such as the school buildings, dormitories, exercise grounds and the usual and appropriate equipment of this character of institution, to be exempt from taxation..."

In the recent case of Harris v. City of Fort Worth, 180 S.W. (2d) 131, Justice Sharp of the Supreme Court, in approving what Mr. Justice Robertson said in the early case of Cassiano v. Ursuline Academy, 64 Tex. 673, said:

"It has been the policy of the state since 1849 to encourage educational enterprises by exempting them from any share of the burdens of government. Pasch. Dig., arts. 5147, 5148, 7485, 7688. . . .

"The education of the masses is now recognized as a function of state government. Those who, from charitable considerations, to forward sectarian views, or for private profit, have organized or conducted

schools, have assisted the state in the
**performance** of a duty it owes to its
citizens which cannot be too thoroughly
performed, and which the state has never
assumed that it had either the means or
the machinery of doing sufficiently well
without private assistance. The Ursuline
Academy is performing its part in this
branch of the public service, and it
should rather be encouraged by aids, than
impaired in its usefulness by a tax upon
its pitiful revenues."

We do not think that Justice Sharp meant to
abrogate the rule of strict construction against tax
exemptions which has always prevailed in this State,
but merely intended the above statement to evidence
the liberality of the Legislature in extending the
exemptions authorized in Art. 7150.

We think Texas will compare favorably with
any state in the Union in the number, efficiency, and
value of educational institutions owned and maintained
by religious organizations. Such schools and colleges
have been fostered and built up, and it has been the
policy of our State to encourage them. It is a matter
of common knowledge that there has been established and
maintained for the laudable purpose of better protect-
ing and conserving the religious, moral, and physical
well being of young men and young women attending vari-
ous educational institutions in this State, dormitories,
which have always been considered exempt from taxation.
The Catholic Church owns and maintains at the University
of Texas Newman Hall, a Catholic dormitory for girls of
that faith attending the University of Texas; the Scot-
tish Rite, a Masonic organization, owns and maintains
at the University of Texas a dormitory for girls, al-
though not exclusively for girls of Masonic family af-
filiation, but primarily for that purpose; and the
Methodist Church owns and maintains Carothers Dormitory
at the University of Texas and at the Texas College for
Women at Denton, Texas, a dormitory for young ladies of
the Methodist Church, and as far as we know there has
not been any attempt by the taxing authorities to im-
pose ad valorem taxes upon these various dormitories,
although they have no official connection with the re-
spective university or college. These dormitories have
been thus owned and maintained for many years, and we
must assume at all times with the knowledge and approval

of the Legislature as to their tax exempt status.
To now hold such dormitories subject to ad valorem
taxes would in our view depart from what we believe
to be the well established and salutary policy of
this State. We, therefore, put aside as immaterial
the fact that this dormitory is owned by the Epis-
copal Church, which has no official connection with
Mary Hardin Baylor College.

It will be observed that the language of
Art. 7150, R. C. S., uses only the term "buildings"
as comprehended within the exemption, but this need
not give us concern because the courts have settled
this question in the early case of Cassiano v. Ur-
suline Academy, supra, from which we quote as fol-
lows:

> "The word building is a term as
> broad as the word house. House has been
> construed to mean both the structure and
> the land on which it stands. Gerke v.
> Purcell, 25 Ohio St., 227; Mullen v.
> Comm'rs., 85 Pa.St., 288; Trinity Church
> v. Boston, 118 Mass., 164, and cases
> cited in it."

Therefore, the ground upon which the build-
ing is located and the building are both exempt under
the Constitution and statutes of this State, but only
so much ground as is necessary for the intended and
reasonable use of the building may be exempt.

In determining whether or not this dormi-
tory, owned, maintained and operated by the Episcopal
Church, is used exclusively for school purposes with-
in the limits of the Constitution and statutes of
this State, we are constrained to follow what we con-
ceive to be the most modern and reasonable construc-
tion placed upon the term "school purposes" by our
courts, and prefer the construction that whatever
fosters the moral, spiritual, and physical well being
of the students is as much a "school purpose" as the
actual academic instruction which the students re-
ceive. We assume, as we think your opinion request
does, that this dormitory is not owned, operated and
maintained by the Episcopal Church for profit, but
exclusively for school purposes consistent with the
aims we have expressed above as to what constitutes
such a purpose. We therefore hold that this dormi-

tory is exempt from ad valorem taxes during the time it was owned, maintained and operated by the Episcopal Church.

### SUMMARY

A dormitory owned, maintained and operated by the Episcopal Church, for use by the girls of Episcopal families attending Mary Hardin Baylor College at Belton, Texas, is exempt from ad valorem taxes, and this notwithstanding it has no other official connection with the College, and comes within the purview of the Constitution, Section 2 of Article VIII, and the statutes, Article 7150, R. C. S., of this State as a building used exclusively for school purposes.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

L. P. Lollar
Assistant

LPL:AMM

APPROVED JANUARY 27, 1947

ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
By  O. S.
    Chairman