THE PEOPLE OF THE STATE OF NEW YORK EX REL. THOMAS G. CLARKSON MEMORIAL COLLEGE OF TECHNOLOGY, Relator, against LESLIE E. HAGGETT et al., as Assessors of the Town of Potsdam, Respondents.

Supreme Court, Special Term, St. Lawrence County, February 24, 1948.

*Frank L. Cubley* and *Seth T. Cole* for relator.

*Charles D. Campbell* and *Philip H. Nelson* for respondents.

IMRIE, J. Relator, located at Potsdam, St. Lawrence County, is a regularly chartered college, giving courses in engineering, chemistry and business administration. Under its charter it confers degrees both honorary and in course. It is not questioned that it qualifies to claim exemptions from taxation under subdivision 6 of section 4 of the Tax Law. As has been the common experience of educational institutions, its faculty, staff and student body have multiplied several times since the end of the war. To meet the demand for additional accommodations it has purchased and used several former residential properties in Potsdam and has also opened a branch at Malone in Franklin County.

Six of these Potsdam properties, with two others not considered by reason of stipulations made before the hearings herein, were assessed for taxation in 1946, by respondents. Relator instituted this certiorari proceeding to have those properties stricken from the assessment roll as exempt under the statute. The proceeding was referred to Hon. ELLSWORTH C. LAWRENCE, as Official Referee, to hear and to report his findings of fact and conclusions of law to this court. His report is now before the court for consideration. The learned Official Referee has ruled that one property, only, is entitled to exemption, that is, the so-called Smith house, 45 Main Street. Relator excepts to the report as to nonexemption of the five other properties; respondents, to the report as to the exemption of the Smith property.

The several properties under consideration were used for the housing of the college students and for apartments for members of its faculty and staff. As additional facilities for students were provided during 1946 and up to July, 1947, students were gradually supplanted in various of the houses by faculty and staff members until, at the time of the hearings, students remained only in the Smith house, in trailers parked in the yard of the Thatcher-Ritchie house (having toilet and water privileges in the basement thereof) and as boarders and roomers in the Graves house. The latter house was occupied by Mrs. Bostick under a written lease with the relator for the use of herself and family but used by her as a boarding and rooming house for relator's students by virtue of a clause in the lease which required that, if and when she "has any roomers or other occupants in said house, aside from her own family, then the said roomers or occupants are confined to Clarkson students and/or faculty only."

The faculty or staff members occupying various of the properties paid stated rentals for their apartments. It does not appear that there were any written leases, or that the occupancy was for any specified term. These occupancies obviously resulted from the tenants' official connection with the college and, presumably, continue only for the duration of that connection. There is evidence that, in some instances, employment with the relator accepted by these persons was conditioned upon relator's furnishing or finding living accommodations for them but the Official Referee properly refused to find that there was evidence that this condition was of general application. These several dwellings were maintained, repaired, heated, lighted and janitored by relator.

Relator does not have a separate and integrated campus. The properties under consideration are in the general village area of the principal and older college buildings. The Official Referee properly held that the mere fact of location away from a campus center would not be sufficient to defeat a claim for exemption, where the college seeking exemption has an articulated system. (*State* v. *Ross,* 24 N. J. L. 497; *People ex rel. Trustees of Mt. Pleasant Academy* v. *Mezger,* 98 App. Div. 237, affd. 181 N. Y. 511; *Matter of Syracuse University,* 124 Misc. 788, affd. 214 App. Div. 375.)

Respondents contend that the rule of strict construction must apply, throughout, to relator's claims. True, that is a rule of general application, but it must not be followed to the point of defeating or frustrating the purposes of the exemption. It

may be said to apply in full force in determining the status of one claiming the exemption as a matter of right. When that qualification is established, then a reasonable, rather than a strict, construction is called for. Moreover, the character of the ownership and the use of the property may, of themselves, call for a relaxation of the primary rule.

Education is declared to be a function of the State. The State may, and does, provide many of the educational processes. It also may, and does, delegate its function in that respect to private corporations under suitable regulations. In such instances, real property of the delegatee, used for the purposes of its charter, is, in fact, devoted to a public purpose and thereby becomes quasi-public in nature. Nontaxation of public buildings and properties is not an act of grace but is a basic principle of our law; it is the rule and not the exception. Thus, school and college properties may be said to receive their rights of tax exemption, not as acts of grace from the sovereign, nor as personal exceptions to the rule that all real property bear its share of the cost of government, but both upon the principle of nontaxation of public places and as a *quid pro quo* for the assumption of a portion of the function of the State. Such a situation calls for a reasonable construction of the exemptive statute, " so as to give full effect to the policy declared ". (*Yale University* v. *Town of New Haven,* 71 Conn. 316, 333; *People ex rel. Trustees of Mt. Pleasant Academy* v. *Mezger, supra; St. Barbara's R. C. Church* v. *City of New York,* 243 App. Div. 371.)

The statute permits tax exemption of the property of an educational institution used " exclusively " for carrying out one or more of its purposes. A cursory consideration of the authorities demonstrates that this State has not bound itself to a strict construction of the word " exclusively." We have recognized, as being within the statute's requirement of such an educational use, *inter alia,* dormitories, dining halls, armories, drill rooms, stables, recreation grounds, chaplains' and farmers' residences, all to the end that the statute should be so applied as to exempt the entire articulated system of an institution, and not merely " the rooms or parts of buildings where tasks are conned or lessons are recited." (*People ex rel. Trustees of Mt. Pleasant Academy* v. *Mezger, supra,* p. 239; *Matter of Mary Immaculate School,* 188 App. Div. 5; *St. Barbara's R. C. Church* v. *City of New York, supra.*)

Essentially we have here for determination the question whether dwellings or apartments owned and maintained by a college but assigned to its teachers or administrators as private

dwellings at a stated periodic rental, but without requirement that the same be open for public or semi-public educational or administrative activities, constitute such a part of the articulated educational system of the college as to permit their exemption from taxation.

We must not permit the issue to be confused by trivia. In this case apartments rented for a set monthly sum. In other colleges, the teacher may be paid a salary which includes the use of living quarters; in some, there may be a fixed salary which is paid, less an amount stated to represent rent. These three methods reach the same result. As a rule, where living quarters are not provided, a larger salary would be required. A rule of statutory interpretation, designed to meet one of these three methods to the exclusion of the others, is not justified because, depending upon a procedure so obviously subject to manipulation, it may become the instrument of its own frustration.

It does not appear that we in this State have passed upon this precise issue, divorced from other considerations. The cited cases of *Trustees of Mt. Pleasant Academy, St. Barbara's R. C. Church* and *Mary Immaculate School (supra)*, with others, indicate a tendency to rule that properties so used should be exempt from taxation. However, two of these cases, presenting overlapping considerations of religious and educational exemptions, fail to provide a complete clarity of statement. *Matter of Syracuse University (supra)*, (followed by the learned Official Referee) negatively, at least, permits the drawing of a contrary inference in that portion of the decision which has to do with the chancellor's residence. There the Special Term held the residence exempt upon the ground that certain general university activities were carried on in that residence, in addition to its residential use. The Appellate Division, in affirming, held the residence exempt, without reference to the Special Term's statement as to the nonresidential uses of the property.

We find disagreement, also, in our neighboring States where decisions are based upon statutes which differ somewhat from ours but not enough so, in principle, as to warrant disregarding their rules.

Massachusetts courts have held that, when residences owned by the college are assigned to professors for private occupancy, with a stated sum deducted from an agreed salary, as rental, such properties are not exempt from taxation. (*Williams College* v. *Williamstown*, 167 Mass. 505; *President of Harvard College* v. *Cambridge*, 175 Mass. 145; *Phillips Academy* v. *Andover*, 175 Mass. 118; *Amherst College* v. *Amherst*, 173 Mass. 232.) Apparent conflicts in the foregoing and earlier decisions are

reconciled in the *Phillips Academy* and *Harvard College* cases (*supra*). .

In Connecticut (*Yale University* v. *Town of New Haven,* 71 Conn. 316, 334, *supra*) it was held that dormitories, even though substantially higher rates were charged in some than in others, a dining hall, the observatory buildings and " the two houses furnished by the College for the officers of the observatory " were, with other properties, exempt from taxation under their statute as "buildings * * * occupied as colleges." The ruling in that case as to the taxability of the house of Professor Brown has no application here. He had purchased the land from the college, by parol, had borrowed money from it for the erection of the house, had not completed payments, so that the title remained in the college.

In *State v. Ross* (*supra*) dwellings at Princeton, owned by the college and occupied by teachers during their tenure, were held to be properly considered as used in the educational process; that it was within the discretion of the trustees, under the original and amended charter of the college (as it undoubtedly is in this State under section 226 of the Education Law), to use its funds for the purpose of providing faculty homes, and that such homes were tax exempt, even though separated physically, by fences or highways, from the college campus.

Since this matter was argued, relator's counsel has handed to me extracts from a recent decision of the New Jersey Supreme Court in *City of Hoboken* v. *Division of Tax Appeals (Dept. of Tax & Fin.)* (134 N. J. L. 594) wherein the rule of the *Ross* case (*supra*) was followed and the statement made, " The city of Hoboken started an innovation in taxing the property [faculty residences] and since, as before noted, the services rendered by the municipality are so trifling the change of purpose seems hard to understand, except for the ever growing desire of cities to bring more and more ratables within the field of taxation."

Relator's experience, in the necessary expansion of facilities, has been and doubtless will be extensively met by other colleges of the State, and in many instances in like manner. The rule should be fixed with certainty, both for the guidance of the taxing authorities and of the institutions involved.

I can find no justification for making a distinction between a dormitory, either simple or elaborate, in which students may room at a stated rental, or a dining hall, in which they may buy their meals, on the one hand, and on the other, a dwelling or an apartment in which one of their teachers may live, either alone or in common with his family, eating, sleeping and, of course, performing necessary out of class tasks, even though, in it, as a

private residence, he might, in the ultimate, choose to assert his rights of castle.

A college with students but no faculty is much more of an anomaly than one with a faculty but no students. In our conception of the term, a faculty and a student body, for all practical considerations, are necessarily coexistent if there is to be a college. Of old, it was said of the revered president of Williams College that Mark Hopkins on one end of a log and a student on the other end constituted a college. Such institutions early learned that a student must live somewhere other than on the end of a log. Nor is the other end a suitable residence for the teacher, particularly in northern New York. In all fairness, we may take notice of the fact that colleges will find it difficult to obtain teachers unless they can provide or find living quarters for them. It is sheer nonsense to assume that the educational process is not progressing in the residences of the teaching staff. Preparations have to be made for recitations, lectures and examinations and duties consequent thereto, to say nothing of meetings with the students, either singly or in groups. Students engage in educational activities in their rooms; teachers do the same in their homes.

By brief and upon the argument each of the parties submitted expressions of administrative opinion upon the question now before us. The relator included copies of letters from Mortimer M. Kassell, deputy commissioner and counsel of the State Tax Commission, addressed to the president of St. Lawrence University and the assessors of the town of Canton, St. Lawrence County, the site of the university. Respondents submitted a printed article appearing in " Assessors Topics," written by C. L. Chamberlain, Chief Municipal Consultant, Department of Audit and Control. True, neither of these opinions is of binding force, but one at least is illuminating as indicating the administrative policy of the State on this subject. In the letter from Mr. Kassell to the university it is said, " The State Tax Commission has heretofore taken the view that properties belonging to a university and used to house professors and teachers are entitled to exemption and that that exemption should be allowed irrespective of their location " and, further, " It is my opinion, therefore, that the properties purchased by St. Lawrence University to house teachers and veterans are entitled to exemption whether located on or off the campus or contiguous thereto."

The indicated administrative policy of the State, in recognizing exemptions of teachers' and administrators' residences

when the same are a part of an integrated and articulated educational system, has ample judicial precedent in this State. We find ourselves a long distance from a literal application of the word "exclusively" in its application to the uses of property of a qualified educational institution. I believe that, in the light of a proper and reasonable interpretation, the policy above stated should receive judicial sanction.

So viewing the matter, I hold that, as real properties used for the corporate purposes of the relator, within the proper exercise of discretion of its trustees and within the purview of the statute, the following properties are exempt from taxation: 45 Main Street (Smith house), reported as exempt by the Official Referee; 69 Main Street (Calipari house); 96 Main Street (McGary-Porter house); 100 Market Street (Thatcher-Ritchie house); and 4 Pierrepont Avenue (Sullivan house).

In the light of this determination it is not material whether, or when, some or all of these were used, in whole or in part, for student housing. Likewise, the question between the parties as to whether it was the understanding that the Official Referee's report should speak as of July, 1946, the time of the assessment, or July, 1947, the time of the hearings, with the intervening changes of occupancy, becomes academic.

Eight Pierrepont Avenue (Graves house), as was found by the Official Referee, is clearly not entitled to exemption, even in the light of the decision in *People ex rel. Trustees of Mt. Pleasant Academy* v. *Mezger* (98 App. Div. 237, affd. 181 N. Y. 511, *supra*). The leasing of this property to Mrs. Bostick is of such a nature as to remove it from the area of educational uses. It is incidental, merely, that it is being used by her for the housing and boarding of students as her private business and for her individual profit under the permissive but not compelling terms of the lease. (*People ex rel. Unity Congregational Soc.* v. *Mills*, 189 Misc. 774, and cases cited.)

I find no reason for disturbing the findings of fact of the Official Referee except only as he states, as findings of fact, that the Sullivan, Thatcher-Ritchie, Calipari and McGary-Porter houses were not devoted to educational uses, and exceptions of both parties to such findings, other than as I have just indicated, should not be allowed.

The order may provide that all of the assessments, except in the case of the Graves house, are illegal and void, directing that they be stricken from the roll and for the cancellation of taxes against such properties and declaring the same exempt from taxation, and with costs to the relator.