Edgar F. Hazleton,
Surrogate and Acting County Judge. This is a proceeding pursuant to section 56-a of the Tax Law, by the American Museum of Natural History to recover certain taxes paid by it or in its behalf on certain real property in the Town of Huntington. This refund is claimed on the ground that the property should have been exempt from taxation pursuant to the provisions of subdivision 6 of section 4 of the Tax Law. To earn the right to such exemption the museum has the burden of proof in establishing that in good faith it contemplated and *856 intended at the time the taxes were paid to hold the real property exclusively for one or more of the purposes mentioned in said section of the Tax Law.
The testatrix, Augusta S. Kalbfleisch, like Saint Francis of Assisi, loved our feathered friends. She enjoyed her estate, Blyenbeck Farm, in Huntington Town by making it attractive to the wild life of Long Island. But being aware, that she would finally have to leave it, made plans to perpetuate it by providing in her last will and testament that her farm, together with an endowment fund of $200,000 go to the American Museum of Natural History as a wild life sanctuary.
However, after her death on March 20, 1956, when her will was propounded, objections to its probate were filed. This court at that time appointed the Hanover Bank the executor named in the will, administrator with the will annexed. The objections, as so often is the case, proved to lack merit, were withdrawn and dismissed. The will was admitted to probate on April 1, 1957 and the devised premises turned over to the museum on September 13,1957.
Because the real estate was not entered on the tax rolls as exempt before June 1, 1957 and 1958, the tax status dates for those respective years, the petitioner was obliged to pay to the Receiver of Taxes of the Town of Huntington under protest real estate taxes amounting to $15,175.11 which sum is the subject of the present claim for refund.
It was stipulated at the time of the hearing that the petitioner is a nonprofit corporation organized for public and educational purposes and is the type of corporation to which tax exemption is granted. The simple question left for determination on this application is whether the museum contemplated use of the Kalbfleisch property prior to June 1,1957 and June 1,1958.
The clear and unequivocable testimony offered at the time of the hearing is that the'museum, in accordance with the wishes of Augusta S. Kalbfleisch, deceased, contemplated using the property as a bird and "wild life sanctuary immediately upon learning of the devise to the museum.
The argument offered by counsel in opposition to the petition that the museum was involved in litigation and its title to the property was not absolute until sometime in September, 1958 and as a result the museum is not entitled to exemption until the latter date is without substance. It is predicated upon the fallacy that title to the property by the museum was held in some inexplicable limbo from the time of the death of the testatrix until September, 1958. The latter proposition is unsound as a matter of law.
*857 Nothing is more firmly established than that it is the will itself and not the probate thereof that vests title to real property in a devisee. Such title vests at the instant of the testator’s death in the devisee named in the will. (Waxson Realty Corp. v. Rothschild, 255 N. Y. 332, 336 [1931]; Corley v. McElmeel, 149 N. Y. 228, 235 [1896].)
Respondents suggest that title to the property in some way was either suspended or vesting was delayed because the contested probate proceeding was pending, a concept, however, which is not sanctioned by law. In Barber v. Terry (224 N. Y. 334, 339) the Court of Appeals said: “ The executors do not receive the real property devised to the Home. At the death of testatrix the title to the lands immediately devolved. It was not left in suspense. The rights of A. M. McGregor Home attached immediately to any interest in the lands lawfully devised to it and the rights of the heirs at law attached immediately to any interest in such lands not thus lawfully devised.”
The record is barren of any challenge to the good faith of the American Museum in planning to use the devised real estate in accordance with the dictates of Miss Kalbfleisch’s will from the date of her death. As soon as the attack on the American Museum’s title had been finally disposed of, plans were put into effect to operate the property as a bird sanctuary. Actually, if there had been no contest, the property, because of its botanical nature, could immediately be considered and used as a bird and wild life sanctuary. When a member of the petitioner’s board of managers, Ethel Roosevelt Derby, was asked on cross-examination if the American Museum had ever contemplated not so using the property, she replied that she did not see how the museum could have honorably accepted the devise unless it had been willing to use the property as required in the wall. She stated that the board of managers was in full agreement with her. Thomas L. Higginson, a trustee of petitioner, testified that when attacks on the museum’s title to the property had been disposed of, the museum had constructed a fence around it at a cost of over $20,000. It is conceded that the property is now being operated as a bird sanctuary and that it has been so operated since the clearing of title. There is no reason to question the museum’s good faith during the period when Miss Kalbfleisch’s relatives were disputing her will.
The intention of the museum to use Blyenbeck Farm as a bird and wild life sanctuary is no mere afterthought because, as is demonstrated by the record in this case, as far back as 1937 the museum indicated its desire to use the Blyenbeck Farm for such purposes. As a matter of fact by 1948 the mailer had developed *858 to a point where the museum, had made formal resolutions for the very purpose of accepting the property from Miss Kalbfleisch. It was only because of increasing taxes that Miss Kalbfleisch then decided she would postpone conveyance of the property until the time of her death.
Shortly after the death of Miss Kalbfleisch, the management board undertook to make plans with regard to the use of the property and for that purpose a committee was appointed. The fact that the museum was prevented from completing its plans because of the objections filed to the probate of the will and the right of the museum to take the property in no way impugns its good faith to use the property for public purposes. I believe this was abundantly established by the petitioner without the slightest challenge on the part of the respondents.
Whether or not the property was actually used as a bird and wild life sanctuary or whether it was maintained by the Hanover Bank, either in its own behalf or as agent for the museum, are wholly immaterial because the statute specifically provides that if real property is not actually being used certain corporations are entitled to tax exemption, if use is in good faith contemplated. On this ground alone the petitioner is entitled to tax exemption herein and its petition for refund should be and hereby is granted. (People ex rel. Clarkson Mem. Coll. v. Haggett, 191 Misc. 621, 623; People ex rel. Nat. Academy of Design v. Feitner, 31 Misc. 565.)
Proceed accordingly on notice.